# APRIL, 1908.

---

Supreme Lodge, Knights and Ladies of Honor v. Charles J. Payne.

No. 1805.   Decided April 1, 1908.

**1.—Life Insurance—Warranty—Medical Examination.**

Where the benefit certificate issued by an insurance company made the medical examination and application of insured a part of the contract and the insured thereby in writing warranted the truth of the answers given to the examiner and declared that the answers as written were as given by applicant to the examiner, and the written answer to a material question was in fact untrue. there could be no recovery, though the answers were made in good faith and were not as written down by the examiner. (P. 455.)

**2.—Same—Pregnancy of Insured.**

The representation warranted to be true by the insured, that she was not pregnant at the time of making the application, being shown to be untrue by her giving birth five months later to a living and well developed child, a peremptory instruction to find for defendant in a suit to recover the insurance upon her death should have been given. (Pp. 452–456.)

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

*Locke & Locke,* for appellant.—In a suit to recover upon a fraternal benefit certificate, if the undisputed evidence shows that the member in applying for the certificate warranted that she was not then pregnant, and shows, also, that in truth she was then pregnant, the beneficiary can not recover. Fitzmaurice v. Mutual Life Ins. Co., 84 Texas, 61; Kansas Mutual Life Ins. Co. v. Pinson, 94 Texas, 553; Satterlee v. Modern Brotherhood of America, 106 N. W. Rep., 561; 25 Cyc., 806; 1 Bacon on Ben. Soc. & Life Ins. (3d ed., 1904), sec. 213; 1 May on Ins. (4th ed., 1900), 184; 2 Joyce on Ins. (1897), secs. 1868, 1791-3; 1 Biddle on Ins. (1893), sec. 531; Cooke on Life Ins. (1891), 24; Bliss on Life Ins. (2d ed., 1874), 47; 1 Parsons on Marine Ins. (1868), 409-10; 1 Arnould on Marine Ins. (2d ed., 1850), *536; Park on Marine Ins. (5th ed., 1802), 175; Phoenix Life Ins. Co. v. Raddin, 120 U. S., 183; Wilson v. Conway Fire Ins. Co., 4 R. I., 141; Campbell v. New England Mut. Life Ins. Co., 98 Mass., 381, 401; Miller v. Mutual Benefit Life Ins. Co., 31 Ia., 216, 232; Royal Neighbors of Am. v. Wallace, 92 N. W. Rep., 897; Fidelity Mut. Life Assn. v. McDaniel, 25 Ind. App., 608; Cuthberston v. N. C. Home Ins. Co., 96 N. C., 480; Vivar v. Supreme Lodge, K. of P., 52 N. J. Law, 455; Kerr v. Union Marine Ins. Co., 64 C. C. A., 617, 130 Fed. Rep., 415.

In a suit upon a fraternal benefit certificate, where the defense is the untruthfulness of a statement warranted to be true, or of one which induced the insurer to accept a risk which otherwise would have been rejected, the insurer is not required to prove that the statement was intentionally false. Henderson v. Railroad Co., 17 Texas, 576, 577; Haldeman v. Chambers, 19 Texas, 49; Pendarvis v. Gray, 41 Texas, 326; Loper v. Robinson, 54 Texas, 510; Culbertson v. Blanchard, 79 Texas, 492, 493; Watson v. Baker, 71 Texas, 750; Carter v. Cole, 42 S. W. Rep., 369; Cabiness v. Holland, 19 Texas Civ. App., 383; McCord-Collins C. Co. v. Levi, 21 Texas Civ. App., 110; Davis v. Driscoll, 22 Texas Civ. App., 15; Byers Bros. v. Maxwell, 73 S. W. Rep., 439; Texas Mutual Life Ins. Co. v. Davidge, 51 Texas, 244; Day v. Mutual Benefit Life Ins. Co., 1 McArthur, 41, 29 Am. Rep., 565; Campbell v. New Eng. Mutual Life Ins. Co., 98 Mass., 381; Vose v. Eagle Life & Health Ins. Co., 6 Cush., 42; Satterlee v. Modern Brotherhood of America, 106 N. W., 561; Baumgart v. Modern Woodmen, 85 Wis., 546; Metropolitan Life Ins. Co. v. Schmidt, 93 S. W. Rep., 1055; Conn. Mutual Life Ins. Co. v. Pyle, 44 Ohio St., 19, 4 N. E. Rep., 465; Powers v. Northeastern Mutual Life Assn., 50 Vt., 630; Foot v. Aetna Life Ins. Co., 61 N. Y., 571; Wright v. Equitable Life Assur. Soc., 5 Bigelow, 401;

Davenport v. New England Mutual Fire Ins. Co., 6 Cush., 340; Wilbur v. Bowditch Mutual Fire Ins. Co., 10 Cush., 446; Sawyer v. Coaster's Mutual Ins. Co., 6 Gray, 221; Gould v. York County Mutual Fire Ins. Co., 47 Me., 494, 74 Am. Dec., 494; Seal v. Farmers' & Merchants' Ins. Co., 59 Neb., 253; Glade v. Germania Fire Ins. Co., 56 Ia., 400; Currell v. Mississippi M. & F. Ins. Co., 9 La., 163, 29 Am. Dec., 439; Macdowell v. Fraser, 1 Doug., 260; Duckett v. Williams, 2 Cromp. & M., 348; Attorney General v. Ray, L. R. 9 Ch., 397, 679.

When an applicant for insurance is examined by the insurer's medical examiner, and signs a written report of that examination, consisting of questions propounded and answers made thereto, for submission to the officers of the insurer in a distant state, and warrants that the answers as contained in the written report are as given by him to the medical examiner, his beneficiary can not avoid the effect of the answers contained in the written report by testimony that other answers in fact were given to the medical examiner. Equitable Life Assur. Soc. v. Hazlewood, 75 Texas, 338; Fitzmaurice v. Mutual Life Ins. Co., 84 Texas, 61; Mutual Life Ins. Co. v. Baker, 10 Texas Civ. App., 521; Hutchison v. Hartford L. & A. Co., 39 S. W. Rep., 325; Fidelity Mutual Life Assn. v. Harris, 94 Texas, 34; Hartford Fire Ins. Co. v. Walker, 94 Texas, 473; Delaware Ins. Co. v. Harris, 64 S. W. Rep., 867; New York Life Ins. Co. v. Fletcher, 117 U. S., 519; U. S. Life Ins. Co. v. Smith, 92 Fed. Rep., 503, 506; Maier v. Fidelity Mutual Life Assn., 78 Fed. Rep., 571, 24 C. C. A., 239; Rinker v. Aetna Life Ins. Co., 64 Atl. Rep., 82.

*Cockrell & Gray* and *H. C. Hughes,* for appellee.—The rule that the breach of a warranty of the truth of an applicant's answers avoids an insurance policy, without reference to her good faith or the materiality of the answer, can not be applied to avoid the policy for the falsity of an answer resulting from a mistake in judgment or an error or a blunder of the Company's agent, who was specially charged by the Company with the preparation of the application, and who made the answers upon a full and truthful statement of the facts by the applicant. Equitable L. Ins. Co. v. Hazlewood, 75 Texas, 347; Mutual Benefit Life Ins. Co. v. Robison, 22 L. R. A., 325; Shotlief v. Modern Woodmen of Am., 73 S. W. Rep., 326; Continental Ins. Co. v. Chamberlain, 132 U. S., 304; Woodmen v. Carrington, 14 Texas Ct. Rep., 397; Aetna Insurance Co. v. Howell, 107 S. W. Rep., 296; Travelers' Insurance Co. v. Crawford, Admr., 106 S. W. Rep., 290; Mut. L. Ins. Co. v. Blodgett, 8 Texas Civ. App., 51.

It is believed that when the questions propounded by a medical examiner to an applicant for insurance are of a technical character, or of a nature which elicits the opinion of the applicant upon a matter which comes peculiarly within the knowledge of physicians, and the answer is dictated by the physician to whom the Company has committed the trust of making the medical examination, after the facts are fairly and in good faith brought to his knowledge, that the com-

pany should be bound by his act, and estopped from asserting the falsity of the answer. Mutual L. Ins. Co. v. Blodgett, 8 Texas Civ. App., 51; Continental Ins. Co. v. Chamberlain, 132 U. S., 304; Endowment Rank, Knights of P., v. Rosenfield, 22 S. W. Rep., 204.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals for the Fifth District. The statement and questions are as follows:

"Charles J. Payne brought this action to recover upon a policy of insurance, or benefit certificate, of $2,000, issued in his favor by the appellant, Supreme Lodge Knights and Ladies of Honor, on the life of his wife, Mary J. Payne. The appellant defended on the ground that certain warranties contained in the contract of insurance had been breached by reason of which it had been discharged from all liability. To this defense appellee pleaded an estoppel that the subject matter thereof was not material to the risk and did not contribute to the death of Mrs. Payne. Upon the conclusion of the evidence appellant requested the following instruction: 'You are instructed that under the undisputed facts as shown by the competent evidence introduced in this case, the plaintiff is not entitled to recover. You will, therefore, return a verdict in favor of the defendant.' This instruction was refused, and the case submitted to the jury upon special issues. Upon the findings of the jury judgment was rendered for appellee and appellant has appealed the case to this court.

"The appellant is a mutual relief association organized and chartered under the laws of the State of Indiana. It has no capital stock and the relief fund is created and sustained by assessments made upon its members in accordance with its bylaws. The affairs of the association are conducted by lodges, a quorum of whose members meet in their respective lodge rooms, at stated times, for the transaction of business. The benefit certificates issued to its members are issued in consideration of and upon the faith of written and printed applications therefor, to which is attached and made a part thereof, what is known as the "Medical Examiner's certificate." Forming a part of this last mentioned certificate is the "Appellant's statement to the Medical Examiner," which consists of printed questions and answers relating to the health, physical condition, etc., of the applicant. Dr. J. H. Erwin, the medical examiner of appellant, examined Mrs. Payne on May 5, 1905, and prepared the application upon which the policy or certificate sued on was issued. This certificate recites: "This Relief Fund Certificate is issued upon the following express conditions: First, That the statements made by the member in the contract known as 'Application for Membership' in Relief Fund and answers to questions in applicant's statement to the medical examiner known as medical examiner's certificate, upon the faith of which this relief fund certificate is issued, are true and shall be treated as warranties." Following the questions and answers thereto, as contained in the applicant's statement to the medical examiner, referred to in the foregoing recitation, is a printed agreement signed by Mrs. Payne, reading thus: "I hereby declare and

agree that the foregoing answers and the statements and the answers to the questions propounded to me by the medical examiner are war-'ranted to be true. And I acknowledge and agree that my said answers and statements in this medical examination, together with my · application for membership, shall form the basis of my agreement with the order, and constitute a warranty. I hereby make my medical examination a part of my application for membership, and agree that my said application and medical examination shall be considered a part of my Relief Fund Certificate. ·I hereby declare . . . that the answers as written herein are as given by myself to the medical examiner. . . ." Among the questions and answers appearing above said agreement are the following: Are you pregnant at this time? Answer, No. Are your menses regular? Answer, Yes. Do you know that in your application for relief fund membership you warrant the correctness and truth of your answers to all questions propounded to you by the medical examiner on this blank and that if your answers to such questions are not true that your relief fund certificate, if issued, would be null and void? Answer, Yes. At the time Mrs. Payne was examined for the policy in suit she was in fact pregnant, and on October 17, 1905, five months and twelve days after the examination, she gave birth to a living child, and on October 31, 1905, she died. The child was well developed and not different from other newly born babies. It survived its mother sixteen days, dying November 16, 1905. In answering that her menses were regular and that she was not pregnant, Mrs. Payne acted in good faith, believing such answers to be true. She disclosed to appellant's medical examiner, in making said answers, fully all the facts known to her touching the irregularity of her menses, and whether or not she was then pregnant. She was, however, at the time of her examination the mother of two children. Dr. Erwin, appellant's medical examiner, did not know at the time he examined Mrs. Payne that she was then pregnant; and appellant would not have accepted the application of Mrs. Payne for the certificate sued on, if it had known that she was then pregnant. There was testimony tending to show that Mrs. Payne died from malarial fever and the jury found that her menses were regular at the time of her medical examination and that her statements that they were regular and that she was not pregnant were not material to the risk assumed by appellant in issuing the policy, and that her pregnancy did not contribute to her death. The specific question, whether Dr. Erwin dictated, advised or suggested the answers of Mrs. Payne, that her menses were regular and that she was not pregnant, does not seem to have been asked and was not submitted by the court to the jury for their determination.

"Dr. J. H. Erwin, appellant's medical examiner, who was authorized by appellant to ask the questions and write down the answers appearing in Mrs. Payne's application, after stating that he had conducted the examination of Mrs. Payne, etc., testified (giving the questions and answers just as they appear in the record), as follows: "Q. At the time you conducted this examination, did you ask the applicant, Mrs. Payne, the question as to whether or not her menses

were regular? A. Yes, sir. Q. Doctor, you were aware of the presence in this application of the statement, that the answer 'Don't Know' would not be accepted, were you not? A. Yes, sir. Q. You were also acquainted with the direction that the medical examiner will put such other questions bearing on the case as you may think proper; you knew that was in there at the time? A. Yes, sir. Q. Now, when you asked Mrs. Payne if her menses were regular, what reply did she make, Doctor? A. She said as a rule, they were. Q. As a rule, they were? A. She missed some times, but as a rule they were regular. Q. She was regular? A. Yes, sir. Q. Then, you put down—what did you put down? A. How did I answer? Q. Yes, sir. A. I answered that they were regular. Q. You answered it? A. Yes, sir. Q. Yes, sir; now Doctor, as a physician, what would you say with respect to the regularity or irregularity of a woman's menses, if, during married life of eleven or twelve years, they came regularly nine or ten, or eleven or twelve, or nine-tenths or twelve-thirteenths of the time, and occasionally missed a month, would you say she menstruated regularly or irregularly? A. I would usually regard her as being regular. Q. The occasional missing for special causes would not make it an irregular menstruation? A. No, sir. Q. Now, then, Doctor, did you ask her the question as to whether or not she was pregnant? A. Yes, sir. Q. What was her answer? A. Well, as well as I remember, she said that she did not know, but that she did not reckon that she was. Q. That she did not know, but she did not reckon that she was; then what occurred? A. I explained to her in case she was, it was no use to examine her; that they wouldn't accept her application, if she was pregnant, and she said that she sometimes missed but came around all right, and that she did not believe that she was pregnant. Q. Was anything said about the other symptoms at the time? A. I don't remember, I know that we discussed it pretty thoroughly, before I answered the question, and she concluded that she was not pregnant. Q. What did you conclude from her statements? A. I did not think that she was. Q. You did not think she was; were there any evidences of pregnancy except the missing of her menstruations? A. No, sir. Q. There were none? A. No, sir. Q. Doctor, did, or did she not—how did she answer the question you put to her; how did she answer the questions, in a straightforward manner? A. Yes, sir. Q. Did you and she discuss the matter fully? A. The examinations? Yes, sir."

"Dr. Baird testified, that he had heard of a few cases where women menstruated all during pregnancy and had seen cases where they menstruated during the first few months.

"The members of this court differ as to how some of the issues of law arising on the appeal should be decided, and deem it advisable to certify to the Honorable Supreme Court of Texas, the following questions for adjudication:

"Question 1. When an applicant for insurance is examined by the insurer's medical examiner, and signs a written report of that examination, consisting of questions propounded and answers made thereto, for submission to the officers of the insurer in a distant State,

and warrants that the answers as contained in the written report are as given by him to the medical examiner, can his beneficiary avoid the effect of the answers contained in the written report by testimony that other answers in fact were given to the medical examiner?

"Question 2. Where an applicant for insurance states fully and truthfully all the facts known to her touching the irregularity of her menses and whether or not she was then pregnant, and the medical examiner of the company, authorized to ask the questions and write the answers, dictates or advises the answers, or, putting his own construction upon the facts, deduces an erroneous answer which he suggests or assures the applicant is the proper answer upon the facts stated, and writes such answer down, will proof of such assurance or that the answer was so dictated, advised or suggested by the medical examiner operate to estop the company from questioning the truth of the answer?

"Question 3. From the facts stated and the testimony of Dr. J. H. Erwin quoted, was the jury authorized to infer, or is this court, authorized to infer, that appellant's medical examiner, Dr. Erwin, did dictate, advise or suggest the answer of Mrs. Payne that she was not pregnant or assure her that it was the proper answer upon the facts stated by her to him?

"Question 4. Did the trial court err in refusing to instruct the jury, as requested by appellant, to return a verdict in its favor?"

---

The answer to Question 4 makes it unnecessary to answer the first three questions.

To the fourth question we answer, that the court should have instructed the jury to return a verdict in favor of the defendant.

The certificate provides that the answers in the application and the medical examiner's report are made a part of the certificate, whereby Mrs. Payne warranted the answer made to the question, "whether or not she was at the time pregnant," to be true; that is, she warranted that she was not at that time pregnant, and that the answer as recorded by the medical examiner was the answer she gave to the question. The fact warranted being untrue rendered the certificate void. (Kansas Mut. Life Ins. Co. v. Pinson, 94 Texas, 555.) In the case cited the court said: "The statements and agreements contained in the application are expressly made a part of the policy and must be given the same force as if written into the policy itself. (Goddard v. East Texas Ins. Co., 67 Texas, 71.)

It is insisted by appellee that this certificate of relief comes within the rule announced in Equitable L. Ins. Co. v. Hazlewood, 75 Texas, 347, in these words: "In the case before us the agreement of the insured was that his answers made or to be made to the medical examiner were warranted to be true. He did not warrant that his answers would be written down correctly by the medical examiner, or that the answers given by him would be correctly reported to the company." In the case before us Mrs. Payne made this declaration at the end of the examiner's report which she signed, to wit: "I hereby declare . . . that the answers as written herein are as given by myself to the medical examiner." And in the body

of the report of the medical examiner she says: "I hereby declare and agree that the foregoing answers and statements and the answers to the questions propounded to me by the medical examiner are warranted to be true, and I acknowledge and agree that my said answers and statements in this medical examination together with my application for membership shall form the basis of my agreement with the order and constitute a warranty." The declaration of Mrs. Payne at the bottom of the medical examiner's report, that the answers recorded were the same that she gave, is entitled to much weight, for it put Mrs. Payne on notice that reliance was placed upon her for their truth. Doubtless that declaration was required in order to secure the personal supervision of the answers by the applicant and to avoid this class of defenses. It is a reasonable and proper requirement. The terms of the contract are more forcible than any argument that could be made in the application of the law to this case. There is no evidence which tends to show any fraud on the part of the medical examiner, nor anything which would indicate that there was any undue influence or improper methods used to secure the answers given. Dr. Erwin and Mrs. Payne were both deceived as to her condition, therefore, the warranty must be enforced. We hold that upon the face of the contract there is no right of action against the appellant.