**TERRY et ux. v. TEXAS PRUDENTIAL INS. CO.**

No. 3149.

Court of Civil Appeals of Texas. El Paso.
Dec. 20, 1934.

Rehearing Denied Jan. 10, 1935.

Leo L. Heisel, of El Paso, for appellants.

Turney, Burges, Culwell & Pollard, and J. F. Hulse, all of El Paso, for appellee.

HIGGINS, Justice.

### Statement of Case.

This is a suit by Mrs. Terry and husband against the appellee, a Texas corporation, upon an insurance policy in the sum of $648, dated July 13, 1931, insuring the life of Mary Virginia Terry, in which policy Mrs. Terry, the mother of the assured, was named as beneficiary. The policy was issued without medical examination.

The court made findings as follows:

"That on or about the 30th day of June, 1931, one M. L. Dilts, Superintendent of The Texas Prudential Insurance Company at El Paso, Texas, and V. C. Horine, an agent of said Company, called at the residence of the assured, Mary Virginia Terry, in El Paso, Texas, and solicited the said Mary Virginia Terry and her parents, Sarah Pearl Terry

and Stephen A. Terry, for an application for life insurance in said company, for the said Mary Virginia Terry. That upon such occasion the said Sarah Pearl Terry and Stephen A. Terry stated to the said agents of said company that Mary Virginia Terry was not insurable, in that she had been suffering with what is known as leakage of the heart, for some five years. That thereupon the said agents stated to the said Sarah Pearl Terry, Stephen A. Terry, and Mary Virginia Terry, that the said Mary Virginia Terry looked to be in good health, and looked insurable, and that they believed that the company would issue a special policy upon the life of the said Mary Virginia Terry, and stated that they would take the matter up with the company officials, in an effort to secure such insurance upon the life of the said Mary Virginia Terry.

"That thereafter, on or about the 2nd day of July, 1931, the said V. C. Horine, agent of said Company, returned to the home of the plaintiffs, Sarah Pearl Terry and Stephen A. Terry, and informed them that the matter had been taken up with the officials of The Texas Prudential Insurance Company, and that said officers had informed said agents that they could write a policy of insurance upon the life of the said Mary Virginia Terry, without a medical examination. That it would be a sub-standard policy for a small amount, and would require a higher rate of premium than an ordinary life policy.

"Thereupon, the said V. C. Horine produced a blank form of application for insurance, and stated to the plaintiffs, in the presence of the said Mary Virginia Terry, that he would fill in the necessary blanks, if they would give him the required information.

"That the plaintiffs thereupon again informed the said Horine that the said Mary Virginia had been suffering with leakage of the heart for a period of five years.

"That when said agents first called upon the plaintiffs with reference to said insurance, the plaintiffs advised said agents that the said Mary Virginia had improved in health during the last two years, and that there was great hopes for her recovery, and this statement was again made upon the second visit of Horine, on July 2nd, 1931.

"That the said Horine pretended to fill out the blanks in said application with the proper information furnished him by the said plaintiffs and the said Mary Virginia, but instead, he concealed said statements, and in response to the question if proposed had ever suffered from heart disease, among other things, he wrote the answer 'No,' and in response to the question as to when the insured was last sick, he wrote the answer 'December and January 1930–31. Cold.' That after said application had been so wrongfully filled in by the said Horine, said agent Horine handed the application to the said Mary Virginia Terry for her signature, at which time the plaintiff, Sarah Pearl Terry, took the application from the said V. C. Horine for the purpose of reading the same. Whereupon, the said Horine informed the said Sarah Pearl Terry, Stephen A. Terry and Mary Virginia Terry that it was unnecessary for them to read the application, that he had included in said form the required information in order to secure the insurance of a sub-standard policy of insurance, such as could be issued upon the life of the said Mary Virginia Terry, and that they could not understand it since they had had no experience in the matter of filling out applications for insurance. And thereupon the said Mary Virginia Terry signed said application at the point indicated, without either reading it, or without the said Sarah Pearl Terry or Stephen A. Terry having read it. That immediately over the signature of Mary Virginia Terry written by herself, is the following:

" 'I hereby apply for insurance for the amount named, and I declare that the answers to the above questions are complete and true, and were written opposite the respective questions by me, or strictly in accordance with my directions. I agree that said answers, with this declaration, shall form the basis of a contract of insurance between me and the Texas Prudential Insurance Company of Galveston, Texas, and that the policy which may be granted by the Company in pursuance of this application, shall be accepted subject to the conditions and agreements contained in such policy. I further agree that no obligation shall exist against said company on account of this application, although I may have paid premiums thereon unless said company shall issue a policy in pursuance thereof, and the same is delivered to me while I am in perfect health, free from injury and disease, and after the premium has been paid by me.'

"That the plaintiffs herein, and the said Mary Virginia Terry relied upon the statements thereupon made to them by the said Horine, and as a result of such statements, they did not read the said application, and the answers as written therein by the said Horine.

"That there was no attempt on the part of the plaintiffs herein, or of the said Mary Vir-

ginia Terry, to conceal the true condition of the said Mary Virginia, but they made a full statement of her condition to both the said Horine and the said Dilts, prior to the signing of said application. And further, that neither of the plaintiffs in this case, nor the said Mary Virginia Terry, knew at the time of the signing of said application by the said Mary Virginia Terry that the said application did not contain the facts as given by them to the said agents of said company. Nor did they know of such misstatements in their said application, until after the policy had been delivered to them as herein stated, and until after premiums had been paid thereon.

"That on or about the 13th day of July, 1931, the defendant insurance company issued its policy No. 840228 upon the life of the said Mary Virginia Terry, which policy named Sarah Pearl Terry, mother of the assured, as beneficiary.

"Said policy was delivered to the plaintiffs herein on or about the 15th day of July, 1931, and said policy was accepted by the plaintiffs without being read by the plaintiffs or the said Mary Virginia Terry."

Other findings are to effect following: The assured died August 24, 1931, of angina pectoris, also known as leakage of the heart. Copy of the application was not attached to the policy. The policy contained these provisions:

"This policy and application is entire agreement between the company, the insured, and the holder and owner hereof, and is incontestable after two years from date of issue except for non-payment of premium. Its terms cannot be changed or its condition varied, except by a written agreement signed by the President, a Vice-President or a Secretary of the Company. Therefore, Agents (which term includes Inspectors, Superintendents, Assistant Superintendents and Cashiers) are not authorized to make, alter or discharge contracts, or waive forfeitures. This policy shall be void if assigned or otherwise parted with, or if any erasures or alterations be made herein, except by endorsement signed by the President, a Vice-President or a Secretary.

"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. This policy is void and of no effect and all premiums paid shall be forfeited to the Company in event of any of the following, to-wit: (1) If the Insured dies before the date hereof, or before the date of actual delivery to and acceptance by the Insured of this Policy, and the first payment due after issue hereof is made, or if on said date of delivery and acceptance, the insured be not in perfect health and free from injury or infirmities;"

"The said Mary Virginia Terry, insured and her parents Sarah Pearl Terry and Stephen A. Terry, plaintiffs at the time of solicitation on or about the 30th day of June, 1931, informed M. L. Dilts, superintendent and V. C. Horine, agent that their said daughter had been under the care of Dr. Thomas C. Liddell, a practicing physician of El Paso, Texas, and again on or about the second day of July, 1931, informed V. C. Horine of the fact that the said insured had been attended by the said Dr. Thomas C. Liddell."

The policy was delivered to the assured by the agent Horine on July 15, 1934.

"The insured, Mary Virginia Terry, at the time of her death had no notice or knowledge of the misstatements contained in said application, and that the representations of the said V. C. Horine, with reference to said application were in fact false; that the plaintiffs were not informed of such misstatements and had no knowledge of such false representations until more than six months after the death of Mary Virginia Terry, the insured."

The representation in the application that the applicant had never suffered from heart disease was material to the risk and "contributed to the loss, in that insured died of a heart disease."

The assured was not in good health when the policy was delivered to her. Two hundred and fifty dollars is a reasonable amount to be allowed as attorney's fee in event the plaintiff should recover. Other facts disclosed by the record will be stated in the course of the opinion.

Upon the findings stated the court made a general conclusion of law that plaintiffs were not entitled to recover anything except the premiums paid which the defendant tendered and rendered judgment accordingly.

### Opinion.

■ Error is assigned to the admission in evidence of the application upon which the policy was issued. It is objected such application was inadmissible because neither it nor a copy thereof was attached to the policy. In this matter the court did not err. First T. P. Ins. Co. v. Pedigo (Tex. Com. App.) 50 S.W.(2d) 1091, 1092; Logan v. Texas M. L. Ins. Co., 121 Tex. 603, 51 S.W.(2d) 288, 53 S.

W.(2d) 299; ·Gadberry v. Home M. L. Ass'n, (Tex. Civ. App.) 57 S.W.(2d) 370.

In the case first cited there was an innocent misrepresentation of a material fact which the insurer pleaded in bar of recovery upon a life insurance policy.

After calling attention to a previous ruling (American National Ins. Co. v. Welsh (Tex. Com. App.) 22 S.W.(2d) 1063) that article 5049, R. S., does not apply to life policies issued after December 31, 1909, the court, in construing articles 5050 and 4732, R. S., said: "These two statutes, as originally passed in the year 1909, constituted a part of the same act. Construing these statutes together, it appears that the Legislature intended to require that the written instrument issued to the insured contain all the terms of the contract between the parties, whether such written instrument be made up of the policy alone, or of the policy and the application. The statutes clearly imply a denial of any contractual force to the provisions of the application, unless the application, or a copy thereof, actually accompany the policy as a part of it. This, of course, comprehends all purported warranties which the application contains. A representation, however, which is made by the insured to the insurer, and upon which the latter relies in entering into the contract, is not contractual but is collateral to the contract. It simply induces the contract. 32 C. J. 1273; 2 Cooley's Briefs on Insurance, 1128. Nothing is found in the language of these statutes to justify the conclusion that the Legislature intended to render unavailable to the insurer, as a basis for defense, any false representation contained in the application, unless the application accompany the policy as a part of it."

It was then held that the false representation, though innocently made, defeated recovery. This opinion was expressly approved by the Supreme Court.

In bar of the present suit the defendant set up the falsity of the representation in the application that the deceased had never suffered from heart disease, and the fact that she was not in perfect health and free from infirmity on the date the policy was issued and delivered to her.

■ Where an insurer, at the time of the issuance of a policy, accepts the premium and delivers the policy, with knowledge of existing facts which, if insisted upon, would invalidate the contract from its inception, such knowledge constitutes a waiver of the right of avoidance because of such facts, and an estoppel arises which precludes the insurer from setting up such facts in avoidance of the contract.

Some of the authorities so holding are Liverpool, etc., v. Ende, 65 Tex. 118; St. Paul, etc. v. Kitchen (Tex. Com. App.) 271 S. W. 893; Southern, etc. v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435, and cases there cited.

Upon the face of the application and below the questions to the applicant are certain questions to be answered by the agent.

The first, second, third, fifth, and eighth questions, and answers thereto, read:

"1. Did you see life proposed at the time this application was written? Yes.

"2. Was this application signed in your presence at the time application was written? Yes.

"3. Was each question put to the applicant and the answer recorded as given? Yes."

· "5. Has the person any physical or mental defect or infirmity of any kind? No."

"8. Do you consider this life a good risk and recommend the company to accept it? Yes."

Below appears the signature of Horine.

It was further shown by the defendant's evidence that Horine and Dilts had authority to solicit the insurance, correctly fill out said application in accordance with the information given by the insured, deliver the policy, and collect the premiums thereon, but "had no authority to waive, change or alter any of the terms or conditions of the application or policy; and had no authority to accept an application or deliver a policy on the life of a person known to them to have, or to have had, heart disease."

■ From the questions to be answered by Horine it is plain it was his duty to disclose to his principal the knowledge which he had acquired of the physical infirmity from which the applicant was suffering because of heart disease and to also advise whether he considered the applicant's life a good risk and would recommend its acceptance.

It thus appears the defendant delegated to Horine authority to ascertain whether the applicant had heart disease or other physical infirmity and imposed upon him the duty of disclosing to defendant the knowledge thus acquired. The knowledge so acquired by Horine was within the scope of the authority delegated to him in soliciting the insurance, taking the application and transmitting the same to his principal.

In our opinion the knowledge by Horine that the applicant had heart disease is imputable to his principal under the familiar rule that notice to an agent when acting within the scope of his authority and with reference to a matter over which his authority extends is notice to his principal. For cases supporting this view of imputed notice upon the facts here shown, see Law v. Texas S. M. F. Ins. Co. (Tex. Com. App.) 12 S.W. (2d) 539; American N. I. Co. v. Bailey (Tex. Civ. App.) 3 S.W.(2d) 539; Southern, etc., v. Mazoch Bros. (Tex. Civ. App.) 291 S. W. 257; American N. Ins. Co. v. Park (Tex. Civ. App.) 55 S.W.(2d) 1088; Lee v. Mutual, etc. (Tex. Civ. App.) 47 S.W.(2d) 402; Id. (Tex. Com. App.) 65 S.W.(2d) 271, and First, etc., v. Smith (Tex. Civ. App.) 60 S.W.(2d) 541; Northwestern F. & M. Ins. Co. v. Allred (Tex. Civ. App.) 19 S.W.(2d) 916.

In this connection the appellee invokes the provision in the policy that the policy and the application is the entire agreement between the parties and which limits the authority to make, alter, and discharge contracts and waive forfeitures, to the president, a vice president, or secretary of the company.

The application has no contractual effect, because neither it nor a copy thereof was attached to the policy. First T. P. Ins. Co. v. Pedigo, supra.

The question of notice is not affected by the limitation of authority contained in the policy.

We think it cannot be properly said that notice acquired by an agent authorized to investigate and report concerning facts material to the execution of an insurance contract will not be imputed to his principal because such agent was without authority to make, alter, or discharge such contract or waive a forfeiture thereof. Southern, etc., v. Mazoch Bros., Law v. Texas S. M. F. I. Co., and Lee v. Mutual, etc., all supra, and Mecca F. I. Co. v. Smith (Tex. Civ. App.) 135 S. W. 688. The question here is one of waiver and estoppel arising out of information acquired by the agent within the scope of delegated authority and with reference to a matter over which such authority extended.

The representation in the application that the applicant had never suffered from heart disease presents no defense because the agent Horine knew she had been so afflicted and his knowledge is imputable to his principal.

The representation in the application that the answers to the above questions are complete and true, and were written opposite the respective questions by me, or strictly in accordance with my directions, does not aid the appellee, because the agent Horine knew it was false.

The rule is that, if the applicant gives true answers to an agent authorized to take written applications for insurance, relying upon the skill and good faith of such agent to correctly record the answers and he records the same falsely, the company is bound thereby, if the insured is justifiably ignorant of such wrongful act of the agent. 24 Tex. Jur. title Insurance, § 177.

Appellee relies upon a number of cases in this state where the application contained a warranty to the effect that the answers as written in the application were true, and in such cases it was held that the applicant was bound thereby, and that an answer incorrectly recorded by the insurer's agent would avoid the policy. Supreme Lodge, K. & L. v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Fitzmaurice v. Mutual L. I. Co., 84 Tex. 61, 19 S. W. 301; Fidelity, etc., v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; Delaware Ins. Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867; Hutchison v. Hartford L. & A. Ins. Co. (Tex. Civ. App.) 39 S. W. 325; Northwestern Nat. Ins. Co. v. Mize (Tex. Civ. App.) 34 S. W. 670; Rockford L. I. Co. v. Tschiedel (Tex. Civ. App.) 61 S.W. (2d) 536; Southern S. Co. v. Benton (Tex. Com. App.) 280 S. W. 551; American N. Ins. Co. v. Huey (Tex. Com. App.) 66 S.W.(2d) 690, 691; Schumann v. Brownwood, etc., (Tex. Com. App.) 286 S. W. 200; Texas, etc. v. Richbourg (Tex. Com. App.) 257 S. W. 1089; Sovereign Camp W. O. W. v. Lillard (Tex. Civ. App.) 174 S. W. 619; Donaldson v. National L. & A. I. Co. (Tex. Civ. App.) 53 S.W.(2d) 136; Westchester F. I. Co. v. Wagner, 10 Tex. Civ. App. 398, 30 S. W. 959.

The five cases first cited, some of them being by the Supreme Court, support the view that the representation in the application that the answers as written were true would defeat recovery by plaintiff unless the doctrine of those cases has been changed by subsequent legislation. Those cases were all decided before 1903 when the Legislature enacted the law (Acts 1903, p. 94) now appearing as article 5049, R. S. 1925. That law has no application to policies of life insurance policies issued subsequent to December 31, 1909. American N. I. Co. v. Welsh (Tex. Com. App.) 22 S.W.(2d) 1063; First, etc., v. Pedigo, supra.

Subdivision 4 of article 4732, R. S., requires that all policies issued or delivered in this state shall provide that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. This article was section 22 of chapter 108, pp. 192, 200, Acts of 1909. The present policy contains such provision, and, by force thereof and the statute, the declaration in the application that the answers were written by the applicant or strictly in accordance with her directions was changed from a warranty to a mere representation. At the time the five cases mentioned were decided such a declaration would have been treated as a warranty and given contractual effect as such. Those cases applied the strict obligation imported by warranties, which requires truth and exact fulfillment, breach of which avoids the contract. Goddard v. Ins. Co., 67 Tex. 71; Kansas City Mut. L. I. Co. v. Pinson, 94 Tex. 553, 63 S. W. 531; Supreme Lodge K. & L. v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Mutual, etc. v. Simpson, 88 Tex. 333, 31 S. W. 500, 28 L. R. A. 765, 53 Am. St. Rep. 757.

In the present cases the declaration has not the contractual effect of a warranty. On the contrary, it is to be treated as a representation known to be untrue by the agent Horine, which notice was imputable to appellee.

We are, therefore, of the opinion the rulings in the five cases mentioned have no present application.

■ The other cases cited by appellee in support of the binding effect of the declaration in question are inapplicable with the possible exception of Rockford L. I. Co. v. Tschiedel (Tex. Civ. App.) 61 S.W.(2d) 536, 537. Some of such cases involve fire, health, or accident insurance policies, whereas article 4732, R. S., applies only to life insurance policies. Others involve insurance contracts of fraternal or other organizations to which said article does not apply. The case of Rockford L. I. Co. v. Tschiedel involved a life insurance policy governed by article 4732, and it was held a declaration in the application that the answers as written were true imposed upon the applicant the duty of seeing that his answers to the medical examiner were correctly recorded by him. From the report of the case it is not clear that this ruling was necessary to the decision. It seems to have been a case of a material false representation as to the condition of the applicant's health, which would have avoided the policy without the application of the strict rules pertaining to warranties. Furthermore, the application in that case was attached to and made a part of the policy which is not the case here.

■ Briefly stated, our conclusions disposing of the theory upon which appellee seeks to defeat recovery herein are as follows:

(1) The knowledge of the agent Horine that the applicant was in bad health and suffering from heart disease is imputable to appellee.

(2) Horine knew the declaration in the application that the answers were written by the applicant or strictly in accordance with her directions was not true, and this knowledge was also imputable to appellee.

(3) The imputation of knowledge of these facts is not affected by the limitation upon Horine's authority contained in the policy, because Horine acquired such notice while acting within the scope of authority delegated to him and with reference to a matter over which his authority extended, as is shown by the questions upon the application which Horine was required to answer and the further authority which he possessed to solicit the insurance, correctly fill out the application in accordance with the information given him by the applicant, deliver the policy, and collect the premiums.

(4) The declarations in the application by the applicant that she did not have heart disease and the answers were written by her or strictly in accordance with her directions are to be treated as representations and not as warranties by virtue of article 4732, subd. 4, and the provision to that effect in the application. For this reason and the further reason that neither the application nor a copy thereof was attached to the policy, such declarations have not the contractual effect of warranties.

(5) Appellee, having imputed notice of the falsity of the said representations and also having like notice that the insured was not in good health and free from infirmity at the time the policy was delivered and accepted, must be held liable under the doctrine of waiver and estoppel announced in the cases heretofore cited.

The case has been fully developed. The judgment will be reversed and here rendered in favor of the plaintiffs for $648, with interest at the rate of 6 per cent. per annum from October 31, 1931 (60 days after proof of death was furnished) plus 12 per cent. penalty and $250 attorney's fee.

Reversed and rendered.