**SOVEREIGN CAMP, W. O. W., v. NEWBERRY et al.**

No. 4742.

Court of Civil Appeals of Texas. Texarkana.

Nov. 1, 1935.

Rehearing Denied Nov. 14, 1935.

840

Alvin H. Lane, of Dallas, for appellant.

Cunningham & Lipscomb, of Bonham, for appellees.

JOHNSON, Chief Justice.

Appellees instituted this suit in the district court of Fannin county against appellant on an insurance policy or certificate in the sum of $10,000, 12 per cent. damages, and attorney's fees. Appellant contested the suit on the ground that the insured, appellees' deceased father, made untrue answers to certain questions propounded to him and recorded in his application by the medical examiner. In reply to appellant's answer, appellees alleged that it had waived the irregularities, if any, contained in deceased's application for the policy of insurance, and was estopped to rely upon same; that the deceased gave to the medical examiner truthful answers to all questions in said application; that the local agent of appellent and W. A. Tidwell, counselor of appellant for the state of Texas, knew the condition of deceased's health at the time the policy of insurance was delivered to him.

It was shown on the trial of this cause that the deceased made application to appellant for a policy of insurance on March 24, 1933; that the policy of insurance was delivered to him on April 7, 1933, and he died on May 12, 1933, after paying one monthly premium. The application for insurance signed by deceased contained the following questions and answers and stipulations:

"8. Have you ever been under observation, care or treatment in any hospital, sanitarium, asylum or similar institution?

"Answer: No.

"9. Have you, within the past five years, suffered any mental or bodily disease or infirmity?

"Answer: No.

"10. Have you, within the past five years, consulted or been attended by a physician for any disease or injury or undergone any surgical operation?

"Answer: No, except acute ptomaine poisoning.

"Explanation: If so what? Give date, duration of same and name and address of physician.

"Answer: 1929. Sick 3 days. Fully recovered. G. M. Whitly, Honey Grove, Texas.

"11. Have you had in the last ten years any disease or injury other than those above mentioned?

"Answer: No.

"12. Have you fully recovered from any and all the diseases or conditions referred to above?

"Answer: Yes.

"13. Are you now in good health?

"Answer: Yes.

"I hereby certify, agree and warrant that I am of sound bodily health and mind; that I am temperate in habits and have no injury or disease that will tend to shorten my life. I hereby consent and agree that this application, consisting of two pages, to each of which I have attached my signature, and all the provisions of the Constitution, Laws and By-Laws of the Association now in force or that may hereafter be adopted shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not.

"I hereby certify, agree and warrant that all the statements, representations and answers in this application, consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not, shall be warranties, and I agree that any untrue statements or answers made by me in this application or to the examining physician, or any concealment of facts in this application or to the examining physician, intentional or otherwise, or my being suspended or expelled from or voluntarily severing my connection with the Association or any failure on my part to comply with the laws of the Association, now in force or hereafter adopted, shall make my beneficiary certificate void, and all rights of any person or persons thereunder shall be forfeited."

The certificate contained on the reverse side thereof the following statement of conditions:

"This certificate is issued in consideration of the representations, warranties and agreements made by the person named

herein in his application to become a member, in the form and as passed upon and accepted by the Medical Director, and in consideration of the payment made when introduced in prescribed form; also his agreement to pay all assessments and dues that may be required of him during the time he shall remain a member of this Association.

"There shall be no liability on the Sovereign Camp of the Woodmen of the World under this certificate until the member named therein shall have paid all entrance fees, one advance annual assessment or monthly installment of annual assessment for the month, signed this beneficiary certificate and the acceptance slip attached thereto; been obligated or introduced by a Camp or authorized deputy in due form and had manually delivered into his hands, in person, this beneficiary certificate while in good health. The foregoing provisions are hereby made a part of the consideration for and are conditions precedent to the payment of benefits under this certificate."

A trial was had to a jury, and in answer to special issues the jury found that at the time the deceased made application to appellant for the policy of insurance he was in good health; that on the date the policy was delivered to him he was in good health; that he disclosed fully and in detail to Dr. Cappleman, the examining physician, at the time of making application for insurance that he, the deceased, had early in 1928 been in a hospital, sanitarium, or similar institution for medical treatment at Paris, Tex.; that the deceased had not within a period of five years immediately preceding the making of his application for insurance in March, 1933, been attended by any physician for any disease or injury, other than ptomaine poisoning in 1929, that was grave, important, or serious, or that would seriously affect the general soundness or healthfulness of his system; and a similar answer was returned by the jury relative to deceased's health for a period of ten years next preceding his application for insurance. On these findings the trial court entered judgment for appellees, from which judgment appellant prosecutes this appeal.

Appellant complains, among other things, of the action of the trial court in refusing to instruct the jury peremptorily in its behalf, because of the untruthfulness of the answers to certain questions in the application for insurance in connection with the warranty of the deceased contained therein. Appellant claims to be a fraternal benefit society with its rights and obligations governed by the laws and decisions pertaining thereto. However, at this point, we are met with the contention of appellees, made for the first time in this court, that the appellant did not establish in the trial court by sufficient evidence that it was a fraternal benefit society, nor did it request an issue be submitted to the jury relative thereto. The appellees in their amended petition upon which they went to trial alleged that the appellant was a fraternal benefit society. The appellant made the same allegation. In such circumstances appellant is to be regarded as a fraternal benefit society, without the necessity of proof or finding of the admitted fact. This character of society is governed by R. S. art. 4820 et seq., as amended by Acts 1931, c. 48 (Vernon's Ann. Civ. St. art. 4820 et seq.), and is exempt from the general insurance laws of this state. The controlling question, then, in our opinion, is: Do the representations and warranties of the deceased in his application to appellant for a policy of insurance as to the truthfulness of the answers written therein, which answers as written were false, defeat a recovery on the contract of insurance? From an examination of the evidence brought forward in the statement of facts, there is no doubt but that the answers to questions 8, 9, 10, and 11, as written in the application, were untrue. The appellees contend that the answers as given by the deceased to the medical examiner were true, but that said medical examiner incorrectly transcribed said answers. This fact might afford some relief to the appellees but for the warranty in said application wherein he says: "I hereby certify, agree and warrant that all the statements, representations and answers in this application consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not, shall be warranties," etc. Thus it will be seen that the deceased not only warrants that the answers as given by him to the medical examiner were true, but goes further and warrants that the answers in said application, whether written by him or not, are true. The reasonable construction to be placed on the language of this warranty, in our opinion, is that the

answers as transcribed by the medical examiner on the application blank are warranted to be true.

It appears to be admitted in this record that shortly after September 9, 1923, the deceased spent about three days in Dallas, Tex., during which time he was under the observation of Dr. Hill of Samuells Clinic, who found the deceased was suffering from gastritis; that early in 1928 the deceased was confined in a hospital at Paris, Tex., for about eight days, suffering from a head injury; and that within the five-year period immediately preceding his application for insurance he had had at least two fainting spells. The application for the insurance policy he signed disclosed none of these facts. In the case of Sovereign Camp, W. O. W., v. Treanor (Tex.Civ.App.) 217 S.W. 204, 206, false answers in an application containing a warranty clause in the exact words as the one in this case were held to preclude a recovery on the insurance policy. The court said: "Under the terms of the insurance contract, it is made the duty of the doctor to require an answer to every question, and to explain the meaning of terms used, but that does not give the doctor the right not to require an answer to the questions because he may not have thought the thing for which he prescribed and treated applicant was a disease within the meaning of the term."

To the same effect are Sovereign Camp, W. O. W., v. Harmon (Tex.Civ.App.) 246 S.W. 704; Modern Order of Prætorians v. Hollmig, 100 Tex. 623, 103 S.W. 476; Id. (Tex.Civ.App.) 105 S.W. 846; Modern Order of Prætorians v. Davidson (Tex.Civ.App.) 203 S.W. 379. It is said in the case of Brotherhood of Railway Trainmen v. Wood (Tex.Civ.App.) 79 S. W.(2d) 665, 667: "According to the general rules governing insurance contracts, the falsity of a warranty defeats recovery upon such a contract without regard to the materiality of the warranty." Citing numerous authorities.

In the case of Supreme Lodge v. Payne, 101 Tex. 449, 108 S.W. 1160, 1162, 15 L.R.A.(N.S.) 1277, Judge Brown, speaking for the Supreme Court, says:

"It is insisted by appellee that this certificate of relief comes within the rule announced in Equitable Life Insurance Co. v. Hazlewood, 75 Tex. [338] 347, 12 S.W. [621] 623, 7 L.R.A. 217, 16 Am.St.Rep. 893, in these words:

"'In the case before us the agreement of the insured was that his answers made, or to be made, to the medical examiner, were warranted to be true. He did not warrant that his answers would be written down correctly by the medical examiner, or that the answers given by him would be correctly reported to the company.' In the case before us Mrs. Payne made this declaration at the end of the examiner's report, which she signed, to wit: 'I hereby declare * * * that the answers as written herein are as given by myself to the medical examiner.' And in the body of the report of the medical examiner she says: 'I hereby declare and agree that the foregoing answers and statements and the answers to the questions propounded to me by the medical examiner are warranted to be true, and I acknowledge and agree that my said answers and statements in this medical examination, together with my application for membership, shall form the basis of my agreement with the order, and constitute a warranty.' The declaration of Mrs. Payne at the bottom of the medical examiner's report that the answers recorded were the same that she gave is entitled to much weight, for it put Mrs. Payne on notice that reliance was placed upon her for their truth. Doubtless that declaration was required in order to secure the personal supervision of the answers by the applicant, and to avoid this class of defenses. It is a reasonable and proper requirement. The terms of the contract are more forcible than any argument that could be made in the application of the law to this case. There is no evidence which tends to show any fraud on the part of the medical examiner, nor anything which would indicate that there was any undue influence or improper methods used to secure the answers given. Dr. Erwin and Mrs. Payne were both deceived as to her condition; therefore the warranty must be enforced."

This opinion, in our judgment, distinguishes clearly the difference between a warranty that the appellant's answers as given to the medical examiner are true, and a warranty that the answers in the application are true, whether written by the deceased or not.

The appellees sought to establish that the appellant had made an independent investigation of the health and physical condition on the date of the application and delivery of the policy. The only evidence

introduced in the record was that the agent of appellant sent a copy of deceased's application to the Hooper-Holmes Bureau at Dallas. It is not shown that Hooper-Holmes made an investigation or that they communicated to the appellant the results of an investigation; therefore we are of the opinion that this evidence in no wise raised an issue of an independent investigation made by the appellant.

Appellees contend that appellant has waived the untruthfulness to the answers to the questions in the application and is estopped to deny liability on the insurance contract. We do not think the evidence in this case raises the question of waiver or estoppel on account of the acts and conduct of the agents of appellant, and that the appellees are bound by the warranty of the deceased in his application for the insurance policy sued on herein. Therefore it is our opinion that the trial court should have instructed the jury peremptorily to return a verdict for appellant.

The judgment of the trial court is reversed and judgment here rendered for the appellant.

HALL, J., disqualified.