SUPREME FOREST, WOODMEN CIRCLE,
v. HARE.

No. 4745.

Court of Civil Appeals of Texas. Amarillo.

April 12, 1937.

Rehearing Denied May 10, 1937.

Earle R. Stiles, of Omaha, Neb., and Underwood & Strickland, of Amarillo, for appellant.

Simpson, Dorenfield & Fullingim and E. H. Foster, all of Amarillo, for appellee.

STOKES, Justice.

This action was brought by the appellee, Orella Hare, against the Supreme Forest, Woodmen Circle, to recover upon an insurance or benefit certificate issued to Irene Hare, in which appellee was the beneficiary, in the sum of $1,000, and upon a supplementary contract attached to it which provided that, in consideration of an additional monthly payment of 12 cents, appellant agreed to pay double the amount to the beneficiary upon due proof that the death of the insured resulted directly and independently of all other causes from bodily injuries, effected solely through external, violent, or accidental cause. Irene Hare was the daughter of appellee and it was alleged that the said Irene Hare, while in good standing, met her death on or about January 4, 1935, at Amarillo, Tex., under circumstances which, if true, would mature the certificate and also the supplementary contract, leaving the appellant indebted to appellee in the full sum of $2,000, for which this action was brought.

Among other defenses, the appellant, in bar of the recovery sought, alleged that the deceased, Irene Hare, in her written application for the benefit certificate, agreed and consented that all of the provisions of the constitution and by-laws of the society in force at the time, or that may thereafter be adopted, should constitute the basis and form a part of any benefit certificate that may be issued thereon and pleaded specifically certain provisions of the application, by-laws, and the benefit certificate, which will later be discussed.

The application contained the following provision: "I hereby certify, agree and warrant that all the statements, representations and answers in this application are full, complete and true, whether written in my own hand or not; and I agree that any untrue statements or answers, or any concealment of facts made by me in this application shall cause my benefit certificate to become void and all rights of any person or persons hereunder shall be forfeited."

Section 45, subdivision No. 1, of the constitution and laws of the Order contained the following provision: "The certificate is issued in consideration of the representations, warranties and agreements made by the person named therein in his or her application to become a member."

Subdivision 9 of the same section contained a provision to the effect that the constitution and laws of the Order, the application, and the certificate should constitute a part of the beneficiary contract between the society and the member.

The certificate contained the following provision: "The articles of incorporation, the constitution and laws of the Society and all amendments to each thereof which may be made hereafter, the application for membership signed by the applicant and approved by the medical director of the Society, including the statements of the applicant to the medical examiner as recorded by him and signed by the applicant, together with the medical examiner's report when a medical examination is required, and this benefit certificate shall constitute the agreement between the Society and the member. * * *"

It also contained the following statement, which was signed by the applicant, Irene Hare, and witnessed by S. H. Taylor, viz.: "I have read the above benefit certificate of the Supreme Forest Woodmen Circle and know the contents thereof and hereby agree to accept the same, and warrant that I am in good health at this time. * * *"

The application for the benefit certificate contained a number of questions which were to be answered, and were answered, by the applicant, among which were questions numbered 25 and 26. Question No. 25 was as follows: "Have you ever been under observation, care or treatment in any hospital, sanitarium, asylum or similar institution?" Question No. 26: "Has there ever been any case of insanity, epilepsy or suicide in your family? (If so, give details)." Both of these questions were answered, "No."

The uncontradicted evidence in the case showed that, in November or December, 1925, a physician treated Irene Hare at the office and the next day she was in the hospital; that he found her mind was impaired and, within a few days, it was very much impaired; that she slipped out of the hospital and was found out in San Jacinto, which was evidently in the suburbs of the city, and she was hunted by the police and her friends. The physician treated her until he was able to get her off to a hospital for nervous patients and he testified that she was most surely insane at that time. He stated further that she did not respond to his treatment, but became violent and hysterical and it was a hard matter to get her away. She was sent by train to Arlington Heights Nervous Hospital at Fort Worth, where she remained for some three months, after which she returned to Amarillo and was apparently recovered.

The case was tried before the court, without the intervention of a jury, and the court rendered judgment in favor of the appellee for the full sum provided by the certificate and also the supplementary contract, amounting in the aggregate to $2,000, and for the further sums of $400 attorney's fee, $240 penalty, and $90 interest.

In its fifth assignment of error, appellant attacks the judgment of the court upon the ground that, it having pleaded and proved that the insured made false representations in her application as to previous treatment in an asylum or similar institution and that there had never been any case of insanity in her family, the benefit certificate issued to her and here sued upon was void and of no force and effect and the appellee was not entitled to recover thereon.

There is hardly any rule of law more thoroughly settled in this state than that, where a mutual benefit certificate provides that the application is made a part of the certificate and contract between the parties, and that the answers, as written in the application, are warranted to be true, the certificate becomes void if it develops that any of the questions in the application have been answered untruthfully, and the rule is not affected nor in any manner changed by the bona fides of the applicant in making them. Goddard v. East Texas Fire Ins. Co., 67 Tex. 69, 71, 1 S.W. 906, 60 Am. Rep. 1; Kansas Mut. Life Ins. Co. v. Pinson, 94 Tex. 553, 555, 63 S.W. 531; Supreme Lodge, etc., v. Payne, 101 Tex. 449, 108 S.W. 1160, 15 L.R.A.(N.S.) 1277; Sovereign Camp, W. O. W., v. Newberry et al. (Tex.Civ.App.) 87 S.W.(2d) 839; Sovereign Camp, W. O. W. v. Treanor (Tex.Civ.App.) 217 S.W. 204.

There is no question that the answers to the questions in the application for the certificate sued on in this case were warranties, made to the appellant by the deceased, Irene Hare, at the time she applied for the certificate, nor is there any question that her answers to questions numbered 25 and 26 in that application were untrue. The application, by its own terms, became a part of the contract. The certificate itself made the application a part of it and the constitution and by-laws of the appellant contained the same provision. There is no dispute in the evidence that, in 1925, long prior to the time the application was made and signed by the insured, she had been confined in an institution for the treatment of nervous diseases and insane people, and, in the language of Dr. Vineyard, the physician who treated her, she was insane. The fact that this condition had nothing to do with her death is beside the point, because the law is well established that this is immaterial when the representations amount to warranties, as they unquestionably did in this case.

But the appellee claims that appellant is estopped to assert the invalidity of the policy or certificate on account of the answers given in the application to questions 25 and 26 because, she says, that the application was taken by a field representative and deputy organizer of appellant, one Mrs. Easum, and, at the time it was prepared and signed by the insured, Mrs. Easum was informed of the facts concerning the insanity of Irene Hare and her confinement in the institution for the insane, and that Mrs. Easum herself wrote the answers to all of the questions in the application, including questions 25 and 26. She pleaded that Mrs. Easum was fully authorized to represent appellant in soliciting policies, taking applications therefor, delivering policies issued on such applications, collecting premiums thereon, and remitting the premiums to appellant at its home office. It was shown by the testimony that the application was taken in the office of the employer of Irene Hare and, when the information called for in questions 25 and 26 was given to Mrs. Easum, the applicant explained to her that several years before she had had a nervous breakdown and was sick for several months and that, during that time, she was sent to an institution and made the statement, "They said I was crazy, but I am all right now and have been

working." Mrs. Easum stated, substantially, that, inasmuch as Irene was in good health at the time and the mentioned illness had been so long ago, there was no use to mention it in the application and she thereupon wrote negative answers to both of the questions.

Mrs. Easum testified, in substance, that she was district manager for appellant and her district covered five or six counties, including Potter county where the application was taken. She said that she was such district manager in 1934 and had been for some twenty-five years and that her commission came direct from the headquarters of the society at Omaha, Neb. That she had full authority from the national headquarters of appellant to act as its officer, agent, and representative and to organize groves, or subordinate lodges, in her district and to write insurance on its behalf and collect the initial premiums on the policies she sold and forward them to the home office. She said that she took the application for the policy sued on in this case and, after the applicant, Irene Hare, was elected to membership in the local lodge, she forwarded the application to the home office and the certificate was issued there and sent to her and she delivered it to the insured and that, in doing all this, she was acting as the agent of appellant.

Appellee bases her contention that appellant, by the acts of its agent, Mrs. Easum, is estopped to plead that the certificate was void upon a number of decisions of the courts of the state, among them being the case of Sovereign Camp, W. O. W., v. Johnson (Tex.Civ.App.) 64 S.W.(2d) 1084. That was a case wherein the insured had removed from Brownwood, but maintained an account in the bank there where the clerk of the local camp, for a number of months, procured the dues without having to communicate with the insured, Johnson. The bank finally declined to continue this practice without specific authority from Johnson and the case arose out of the conduct of the clerk in regard to this matter. The court held that the clerk was vested with the power to collect dues and assessments from the members and, within the limits of that authority, the Sovereign Camp was bound by his acts and by his failure to act. No doubt this is the law. Every person and every corporation is so bound; but it is equally well settled that the acts

of the clerk or any other agent by which they are so bound must come within the scope or, at least, the apparent scope, of the delegated authority. There are a number of cases in which beneficial orders, such as the appellant in this case, have been estopped by acts of their agents and representatives, but we have found none which so holds in the absence of a distinct showing that the agent had authority from the principal to perform the act which constituted the estoppel. Many of the cases cited on this point by appellee are cases involving the collection of dues by officers of local lodges. As we view it, this is an entirely different matter from a warranty in an application and those cases in which the doctrine of estoppel has been applied to beneficial associations on account of acts and conduct of clerks and collectors of local organizations in the matter of collecting dues from members have no application in a case like this, where the very acts of the clerk or other local officer upon which estoppel is sought to be based are covered by warranties in the written contract.

We think this case is controlled by the doctrine announced by the Supreme Court in the early case of Kansas Mut. Life Ins. Co. v. Pinson, 94 Tex. 553, 63 S.W. 531. In that case the applicant for mutual benefit insurance gave incorrect information concerning the ages of his brothers and sisters. In the application, he certified he had read it and that his answers to the questions and statements were true and correctly recorded. In disposing of the case, Judge Brown, speaking for the court, said: "The statements and agreements contained in the application are expressly made part of the policy, and must be given the same force as if written into the policy itself. Goddard v. Insurance Co., 67 Tex. [69] 71, 1. S.W. 906, 60 Am.Rep. 1. May, Ins. § 158. The explicit terms in which the statements and warranties are expressed leave no room for doubt that the parties intended to make the validity of the policy depend upon the truth of the statements warranted. The recital in the application that the statements are presented as a 'consideration of this contract,' and the declaration in the policy that such statements and agreements constitute a part of the consideration for the issuance of the policy, support this conclusion. Assuming that the statement accompanying the question certified contains all of the terms of the policy which bear upon the question, we conclude that they constitute a warranty that the ages of the sisters named were correctly stated in the application."

This case has been followed consistently through all of the years since it was rendered and its holding is, without a doubt, the law in Texas today.

The case of Sovereign Camp, W. O. W., v. Newberry (Tex.Civ.App.) 87 S.W.(2d) 839, 840, was a case very similar to the instant case. In that case, it was found that the answers to certain questions, as written in the application, were untrue. The appellee sought to avoid the effect of making untrue statements in the application by showing that the answers as given by the deceased were true, but that the medical examiner incorrectly transcribed them. In disposing of this contention, the court held that this fact might afford some relief to the appellees but for the warranty in the application which says: "I hereby certify, agree and warrant that all the statements, representations and answers in this application, consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not, shall be warranties," etc. To the same effect are Sovereign Camp, W. O. W., v. Treanor (Tex.Civ.App.) 217 S.W. 204; Sovereign Camp v. Harmon (Tex. Civ.App.) 246 S.W. 704; Modern Order, etc., v. Davidson (Tex.Civ.App.) 203 S. W. 379; Supreme Lodge v. Payne, 101 Tex. 449, 108 S.W. 1160, 15 L.R.A.(N.S.) 1277; Home Ins. Co. v. Lake Dallas Gin Co. (Tex.Com.App.) 93 S.W.(2d) 388; Goddard v. East Texas Fire Ins. Co., 67 Tex. 69, 1 S.W. 906, 60 Am.Rep. 1.

A number of other assignments of error have been presented by appellant, but they all raise issues which were controverted by the testimony in the case and, being controverted issues, it will be presumed by this court that they were decided by the trial court in such manner as to support the judgment rendered upon the trial.

It follows from what has been said that appellant's fifth assignment of error will have to be sustained and, as the case was fully developed in the trial court and our holding necessarily implies that the trial court should have rendered judgment for the appellant instead of for the appellee, the judgment of the trial court will be reversed and here rendered for the ap-

**418**

pellant and that it go hence without day and recover all costs of the trial court and of this court.