## SECURITY BENEFIT ASS'N v. HIBLER.
### No. 4769.

Court of Civil Appeals of Texas. Amarillo.
May 31, 1937.

Rehearing Denied June 28, 1937.

Underwood & Strickland, of Amarillo, for appellant.

Monning & Akin, of Amarillo, for appellee.

STOKES, Justice.

Appellee, Albert Hibler, brought this action in the 108th district court of Potter county against appellant upon a certificate of insurance issued by it upon the life of Mattie Hibler, his wife, in which he was the beneficiary, dated August 26, 1933, in the sum of $1,000, together with 12 per cent. penalty and reasonable attorneys' fees. He alleged in the alternative that if the policy or certificate had become forfeited, appellant unconditionally accepted all premiums thereon from and after such forfeiture until the death of the insured and retained all premiums after her death, with full knowledge at all times of the facts, without any requirements or reinstatements, or additional acts on the part of the insured, and thereby waived all provisions concerning reinstatement, and waived the forfeiture, if any, and also alleged that appellee had thereby entered into a new contract with the insured to pay her beneficiary upon her death the sum of $1,000, in consideration of monthly payments of $2.20 each, with no agreement in reference

to the insured's application for insurance or the charter, by-laws or constitution of appellant being made a part of such oral contract, and with no conditions imposed in regard to the condition of her health. He further alleged that the insured, Mattie Hibler, died in the month of October, 1935, and, although due proof of her death had been furnished appellant, and demand made upon it for payment of the amount due under the insurance certificate, it had wholly failed and refused to pay same or any part thereof.

Appellant answered by pleading the general issue and specially that the insured had made application in writing for membership and insurance in its organization, in which application she had made certain warranties to the effect that she was in good health and had not been under the care of or consulted any physician or surgeon within the five years preceding the date of such application, which representations and warranties were alleged to be false and untrue. It alleged that at the time of making the application she was suffering from a cancer of the parotid gland and other physical ailments, and that she had, within the five-year period immediately preceding the date of the application, consulted physicians and surgeons concerning a cancer of the parotid gland, and that, within said time, she had undergone a surgical operation for the removal of a tumor of the parotid gland. It pleaded the terms of the application wherein it alleged the insured had warranted all the answers and statements in the application to be full, true, and correct, and agreed therein that the answers to the questions and statements contained in the application should be held to be warranties and considered as part of her benefit certificate, and also that she would be bound by the constitution and by-laws of the association.

Appellant further alleged that the certificate provided that the charter, constitution, laws of the society, the application for membership, and the certificate should constitute the entire agreement between the parties, and that by reason of the false and fraudulent statements contained in the application, and the misrepresentations and false answers given by the insured to the Association in her application and medical examination, the certificate was of no force or effect, and it was not liable to the beneficiary in any sum whatever.

Appellant further alleged a forfeiture of the certificate for failure to pay dues for the month of December, 1933, before the last day of that month, and pleaded at length the by-laws pertaining to reinstatement, to the effect that the member must be in good health at the time, and that when the December dues were paid on January 4, 1934, the insured was not in good health, but was at that time suffering from carcinoma of the parotid gland, and from the effects of an operation performed at the Mayo Sanitarium, by reason of which the reinstatement never really became effective. It alleged failure to make other payments within the time prescribed over a period lasting until September, 1934, but that in each and every instance it accepted the dues, subject to the warranty of good health written into the contract, by the by-laws of the association, and that it did not know until many months after the delinquencies that she was not in good health on the dates of the suspensions.

By supplemental petition, appellee denied the insured had made false answers to the questions contained in her application, but alleged that she told the medical examiner that during the first portion of the year 1930 she had undergone an operation on her parotid gland, and had been treated by Dr. Keys of Amarillo. He denied she had answered question No. 11 in the application to the effect that she was in good health, and No. 19 to the effect that she had not been under the care of a physician or surgeon within five years, and No. 21 to the effect that she had not undergone a surgical operation, but alleged that, if those questions were answered in the manner indicated, the medical examiner had recorded the same falsely and fraudulently, in that she had told him the true facts concerning the matters inquired about, and, if they were answered as alleged by appellant, the medical examiner inserted the answers of his own accord and without her knowledge or consent. He alleged that both the medical examiner and the financier of appellant were agents of appellant, and that, if Mrs. Hibler were not in good health at the time the application was made, they were fully aware of it, and that she fully informed them concerning her true condition at that time and at all times inquired about in the questions contained in the application, which knowledge was imputed to appellant; that notwithstanding the knowledge of the finance

officer of her true condition, upon the return of the insured to Amarillo, after her final operation at Mayo's, the local finance officer continued to collect the monthly premiums and that the Association was therefore estopped to deny liability.

Question No. 19 in the application was as follows:

"(a) Have you been under the care of or consulted any physician, surgeon, or practitioner of any school concerning yourself within the past five years?

"(b) If so, for what disease or ailment, name and address of each physician, surgeon or other practitioner, and give dates."

Subdivision (a) was answered "No," and subdivision (b) was answered "None."

Question No. 21 was as follows:

"(a) Have you ever undergone any surgical operation?

"(b) If so, when, and what for?"

Both of these questions were answered, "No."

Question No. 11 in the application was: "Are you now in good health?"

This was answered "Yes."

Immediately preceding the signature of the applicant was the following: "I hereby warrant that I have verified the answers to Questions 8 to 24 inclusive, as written, and the same are true and correct."

Above the signature of the applicant appeared the following:

"As a consideration for the acceptance of this application and the issuance to me of a beneficiary certificate by The Security Benefit Association, I warrant that the foregoing answers and statements are true, full and correct, and I agree that the said answers and statements shall be held to be warranties.

"I further agree if accepted as a member of the Order that this application shall be considered a part of my beneficiary certificate and that I will be bound and my membership contract governed in all respects by the Constitution and Laws of The Security Benefit Association now in force or as the same may be hereafter amended or enacted, without reservation or exception as to the character or nature of such after enactment or amendment. * * *

"As a further consideration for the acceptance of this application and the issuance of a beneficiary certificate to me I warrant that I am now in sound physical and mental condition of health."

The case was tried to a jury on June 6, 1936, and submitted on special issues under which the jury found in substance that the insured, Mattie Hibler, was in good health on August 19, 1933, the date of the application, and also on August 26, 1933, when the policy was delivered; that she did not answer "No" to the question, "Have you been under the care of or consulted any physician, surgeon or practitioner of any school concerning yourself within the last five years," and that she did not answer "No" to the question, "Have you ever undergone any surgical operation."

The jury further found that the medical examiner represented to the insured that he had recorded her answers to the questions in her application just as she had given them to him; that said representation was untrue; that she believed the representations made to her by him in that regard, and that such representation was a material inducement causing her to sign the application. They further found that in making the physical examination of the insured, the medical examiner learned of the true condition of her health, and that she had consulted a physician within the five years preceding, and that, within that time, she had undergone an operation on her neck. Under further special issues the jury found that the district manager of appellant, in the discharge of her duties as such, on or prior to August 19, 1933, learned of the true condition of the applicant's health, and that she had consulted a physician and undergone an operation on her neck within the five years preceding.

Upon the findings of the jury, the trial court entered judgment in favor of the appellee for the sum of $1,370, which included 12 per cent. penalty and $250 attorneys' fees.

■■ Under its first proposition appellant asserts that its special exception to the allegation of appellee setting up an oral contract of insurance made through the local agent of appellant, was defective and did not state a cause of action. This allegation of appellee was based upon the alleged forfeiture of the certificate which resulted from the failure of the insured to pay the monthly assessment for the month of December, 1933, appellee taking the position that, if the certificate were forfeited by such failure, the local officer whose duty it was to collect the dues in the district had accepted the December dues when they were tendered in January, and if the certificate had theretofore been forfeited, a new contract·

sprang from such acceptance; that such new contract was oral and therefore not subject to the constitution or by-laws of appellant, nor to the application which she had made for the written certificate.

Article 4834, Revised Civil Statutes, 1925, furnishes the authority under which appellant transacts its business in this state. It is provided by that article that every certificate issued by such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter, articles of incorporation, the constitution and laws of the society, and the application for membership and medical examination signed by the applicant, and all amendments to each, shall constitute the agreement between the society and the member. There is no statutory authority for mutual benefit associations, such as appellant, to make oral contracts of insurance, and if such a contract were made it would be in violation of the statute and of no effect. Even if such a contract could be held to be a valid and binding obligation, it would not relieve the beneficiary, in a suit against the association for the amount of insurance provided by it, for the reason that the law requires that the charter, constitution, by-laws, and the application for membership and medical examination, signed by the applicant, and all amendments to each, shall constitute the agreement between the society and the member. If, therefore, the written certificate were abrogated by the alleged forfeiture, as claimed by appellee, and a new contract executed in parol, the constitution and by-laws of the order would, by force of the statute, become a part of it and, even if the application should be eliminated, the constitution and by-laws contained provisions substantially the same as that relied upon by appellant as a defense, and the issues necessarily would be substantially the same as if the suit were upon the written certificate. Appellant's first proposition is therefore sustained. Valerio v. W. O. W., 174 Wis. 519, 183 N.W. 697; 1 Couch Cyc. Ins.Law, § 81.

The controlling question in the case is raised by appellant's eleventh assignment of error under which it presents its sixth proposition to the effect that the trial court erred in refusing to give to the jury its requested peremptory instruction, claiming that, it having been affirmatively established that the written application, the answers to which were warranted as true and correct, contained false answers as to past medical and hospital treatment, the policy was avoided, and it was therefore entitled to a peremptory instruction in its favor.

There was no issue submitted to the jury concerning the question of whether or not the insured had been treated by a physician during the five years immediately preceding the date of the application, nor as to her having consulted a physician during that time. It was undisputed that she had. In her answer to question No. 19 in the application, she represented that she had not been under the care of or consulted any physician, surgeon, or practitioner of any school concerning any disease or ailment in that time, and in No. 21 she represented she had never undergone any surgical operation. The application was signed on the 19th of August, 1933, and the undisputed evidence showed that on April 10, 1930, Dr. Keys and Dr. Gist operated on her at St. Anthony's Hospital at Amarillo, removing a tumor from the parotid region, which they diagnosed as tubercular. It was shown that Dr. Van Sweringen, pathologist for St. Anthony's Hospital, on the day of this operation, examined the removed gland tissue and reached the conclusion that it was tubercular, but he did not note anything which appeared to be malignant in its nature. He testified that he treated Mrs. Hibler with X-ray treatments in the latter part of 1932 and the first part of 1933 in an effort to prevent a recurrence of the tumor in the parotid region, and that it was customary and proper to use such treatments for tubercular glands and in cases of malignancy, especially to prevent recurrence of such tumors and growths. These X-ray treatments were applied to her neck and were administered in November and December, 1932, and January, 1933. He said that Dr. Keys sent Mrs. Hibler to him for X-ray treatments, and the record shows that Dr. Keys advised her to go to Mayo's Clinic for an operation, which she did, and the operation was performed there on October 21, 1933, in which a cancer was removed from the parotid region. It was shown without dispute that the cause of the death of the insured on October 16, 1935, was a recurrence of the tumor in the parotid region and that it was a cancer.

Appellee contends that the appellant is estopped from setting up the warranty contained in the application and the provisions of the constitution and laws of the association, because it is alleged and shown, and the jury found, that in giving her answers to the medical examiner, the insured, Mrs. Hib-

ler, informed him of the true facts in regard to the first operation and of the tumor in the parotid region which had been removed by the operation at St. Anthony's Hospital, and that the agent of the association who took her application was present at the time of the medical examination and that both the physician and the agent were fully informed of all the facts concerning her condition and treatment by physicians during the five years immediately preceding the date of the application. He also alleged ánd the proof showed without contradiction that, when the application and medical examination were completed, Mrs. Hibler was shown the line at the bottom and requested by the medical examiner to sign same, and that she asked him if he had written the answers to the questions just as she had given them to him, and that he assured her he had. Also that she manifested a desire to read the questions and answers. she had made, and the medical examiner assured her it was not necessary for her to read them; that he had written them just as she had given them to him, and that he had another engagement and was in a hurry. Appellee takes the position that this conduct on the part of the medical examiner constituted a fraud for which the association, and not the insured, was responsible and had the effect of visiting upon the association notice of the fact that the answers written in the application by the medical examiner were not those which had been given by the insured and constituted a waiver and estopped the association from setting up as a defense the falsity of the answers as written in the application.

■ It is settled law in this state that a warranty in a contract of insurance in a mutual benefit association is a statement made by the insured which is susceptible of the construction that the parties intend the contract should not be enforceable if the statements of the insured be not literally true and correct. This is the law, although the statements may have been made in good faith or through mistake or inadvertence of the applicant for insurance. In the case of Supreme Lodge Knights & Ladies of Honor v. Payne, 101 Tex. 449, 108 S.W. 1160, 1162, 15 L.R.A. (N.S.) 1277, in answering a certified question, the Supreme Court, through Justice Brown, said: "The certificate provides that the answers in the application and the medical examiner's report are made a part of the certificate whereby Mrs. Payne warranted the answer made to the question

'whether or not she was at the time pregnant' to be true; that is, she warranted that she was not at that time pregnant, and that the answer as recorded by the medical examiner was the answer she gave to the question. The fact warranted, being untrue, rendered the certificate void. Kansas Mut. Life Insurance Co. v. Pinson, 94 Tex. [553] 555, 63 S.W. 531. In the case cited the court said: 'The statements and agreements contained in the application are expressly made a part of the policy, and must be given the same force as if written into the policy itself. Goddard v. Insurance Co., 67 Tex. [69], 71, 1 S.W. 906, 60 Am.Rep. 1.'"

There is no substantial difference between the warranty contained in the application of the insured in the instant case and that involved in the Payne Case. The record is conclusive that the answers as written by the medical examiner to questions Nos. 19 and 21 were untrue. In them the insured warranted that she had not been under the care of or consulted any physician, surgeon, or practitioner of any school concerning herself within the past five years for any disease or ailment, and that she had never undergone any surgical operation. It is shown without dispute that she had been operated on within such period by Dr. Keys and Dr. Gist, and that they had removed from the parotid region a tumor, which they diagnosed as tubercular. Incidentally, it may be noted that the recurrence of a tumor at the identical spot from which this one was removed caused the death of the insured.

■ The only means by which a misrepresentation which amounts to breach of a warranty in such an application can be avoided is through estoppel or waiver on the part of the insurer. That rule was recognized by appellee in this case and he alleged that the medical examiner assured Mrs. Hibler that it was not necessary for her to read the answers to the questions because he had recorded them just as she had given them to him, and that his answers in that regard constituted a fraud upon her and prevented her from ascertaining the fact that he had not recorded the answers as she had given them to him. As a basis for estoppel, appellee seeks to visit upon appellant notice of the facts as actually given to the medical examiner by the insured by virtue of the alleged fraud of the medical examiner in that respect, and cites us to the case of

Lee v. Mutual Protective Ass'n (Tex.Civ. App.) 47 S.W.(2d) 402, 405. In that case the information which went into the application was given to the agent by N. P. Lee, son of the insured. The application was not signed by any one, and in answer to the question concerning the good health of the insured, the answer was given that she was "in bed part of the time," which was written into the application by the soliciting agent in the blank following the question. After the application was delivered to him, the answer as given and written was erased and the word "Yes" written in its stead. The Court of Civil Appeals at Eastland, in passing upon the case, held that "If the company's agent, in preparing the application, either by neglect, mistake, or fraud, without the knowledge of the insured, inserts false answers therein when correct replies were given by insured to the questions asked, the prevailing rule is that the fault of the agent must be borne by the company which sends him forth." The effect of the holding is that, where a fraud has been perpetrated upon the insured by the agent, and the insured is in no manner responsible for it, the insurer, having sent the agent forth to deal with applicants for insurance, rather than the innocent insured person, should bear the responsibility for his fraudulent acts. Further quoting from that case it is said: "The only reason the association did not have the benefit of the true facts * * * was the breach of a duty on the party of its agent, for which the applicant was not responsible and which was covered by no warranty of the applicant to the association. The only way to visit the consequences of that breach of duty upon the insurer who 'sent the agent out,' rather than upon the insured who was at no fault, is to charge the association with the knowledge which it was the duty of its agent to give." It will be seen that not only was the insured not responsible for the fraud, but there was no way in which she could have known of it. The answer to the question as given by her son to the agent and by him written into the application was the correct one and revealed the facts as they really existed. It was that answer which was warranted to be true— not the answer later inserted by a fraudulent act which probably amounted to the crime of forgery. No such condition exists in the instant case. There was no testimony showing any act of the medical examiner in this case which prevented the insured from reading the answers that had been written to the questions in the application. The most that can be said is that he persuaded her not to do so by stating that it was not necessary and he was in a hurry to fill another engagement.

Miss Lillian Hibler, daughter of appellee, testified she was present when the application was taken, and that when it was finished, her mother asked the doctor if she should read it, and he said, "No, that he was busy and had another appointment and not to read it, and he showed her the place where to sign it." She said that her mother asked the doctor if he had put everything down just as she had said it, and he said, "Yes, that she wouldn't have to read it." She said that her mother then said: "If you have put everything down as I have told it to you, I will sign my name here."

In our opinion, this testimony shows no more than that Mrs. Hibler trusted the medical examiner to write her answers, and also was willing to take his word as to whether or not he had recorded them as she had given them to him. It was the duty of Mrs. Hibler to read the application before she signed it. Not having done so, and it not having been shown that she was deprived of an opportunity to do so if she desired, the case does not fall within the doctrine laid down in the Lee Case. If she had read it she would have learned from it that it constituted a part of the contract. But even if she had been deprived of reading the application and the answers to the questions which had been inserted by the medical examiner, still, when she received the policy with the provision that "the certificate, together with the charter and constitution and laws of the society and all amendments to each thereof, and the application for membership signed by the member, which are made a part hereof, shall constitute the agreement between the member and the society," she was informed that the application was a part of the contract and, if she had read the policy, as it was undoubtedly her duty to do, she would also have learned that the constitution and laws of the order were a part of the certificate and that all of them contained substantially the same provisions as those contained in the warranty in the application.

Many cases are cited by appellee in support of his contention that the acts and conduct of the medical examiner and the

soliciting agent at the time the application was taken constituted fraud which was imputable to the association and by virtue of which the association waived the provisions of the contract concerning the erroneous answers made in the application. They consist of such cases as Terry v. Texas Prudential Ins. Co. (Tex.Civ.App.) 77 S. W.(2d) 761, 765. It is held in that case that "The rule is that, if the applicant gives true answers to an agent authorized to take written applications for insurance, relying upon the skill and good faith of such agent to correctly record the answers and he records the same falsely, the company is bound thereby, if the insured is justifiably ignorant of such wrongful act of the agent." But it is also stated in that case that the declaration did not have the contractual effect of a warranty, and likewise in all of the cases cited in support of his contention, some justifiable excuse, such as fraud of the agent or delegated authority, is given for holding the insurance company liable where correct answers were given by the applicant but inserted falsely in the application by the agent.

The courts of this state have decided many cases involving the question of reinstatement, and in a great many of them it has been held that the local camp and its officers bore such relation to the head camp as that notice to them at the time of reinstatement of conditions adverse to those contemplated by the contract of insurance was notice to the association. These cases proceed upon the theory that the matter of determining whether or not the reinstatement should be effected had been delegated by the head camp of the association to the local officers. Likewise cases will be found in which policies have been delivered by the officers of the local lodge at times when the insureds were not in good health when the certificates provided that their delivery under such circumstances would avoid them. These cases proceed upon the theory that the entire contract was placed in the hands of the local representatives, including the duty of determining the question of the good health of the insured at the time of delivery, and, therefore, notice to the local lodge or delivering agent was notice to the head camp or the association. But no such condition exists in the case before us. The appellant is not liable upon the certificate sued on in this case unless it can be said, as in the case of Lee v. Mutual Protective Ass'n, supra, that the doctor who examined Mrs. Hibler at the time she made application for the insurance, perpetrated a fraud upon her, and that she was not only entirely innocent but was deceived and prevented from ascertaining the true facts. We do not think such can be said in view of the record here.

The Supreme Court in a number of cases has plainly stated the effect of a warranty made under conditions revealed in this case, and it has many times been held that where such warranty is to the effect that the answers contained in the application, regardless of who wrote them, are warranted to be true, it means just what it says, and where such answers are not true and no reasonable excuse given why the insured permitted them to reach the association as written, the insured and the beneficiary are bound by the warranty and no recovery can be had. Regardless of whether the insured read the application and the warranty, the policy, the constitution and by-laws or not, she was bound by them in the absence of fraud of that nature which would be sufficient to set them aside. Rockford Life Ins. Co. v. Tschiedel (Tex.Civ.App.) 61 S.W.(2d) 536; Supreme Lodge Knights, etc. v. Payne, 101 Tex. 449, 108 S.W. 1160, 15 L.R.A.(N.S.) 1277; Sovereign Camp, W.O.W. v. Harmon (Tex.Civ.App.) 246 S.W. 704; Southern Surety Co. v. Benton (Tex.Com.App.) 280 S.W. 551; Fitzmaurice v. Mutual Life Ins. Co., 84 Tex. 61, 19 S.W. 301; Texas State Mut. Fire Ins. Co. v. Richbourg (Tex.Com.App.) 257 S. W. 1089; General Life Ins. Co. v. Mathes (Tex.Civ.App.) 100 S.W.(2d) 1044.

Under the facts of this case, and in view of the law as reflected by the holdings of the Supreme Court and Courts of Civil Appeals in the cases cited, it is our opinion that the appellee was bound by the warranty in the application and the other provisions of the contract contained in the certificate, constitution and by-laws of the association, and by the answers as written in the application for the insurance. It follows therefore, that the appellee was not entitled to recover, and the trial court erred in declining to give to the jury the peremptory instruction for appellant, as requested by it. Such being our conclusion, the judgment of the trial court will be reversed and judgment here rendered for the appellant.