## NORTHWESTERN FIRE & MARINE INS. CO. v. ALLRED. (No. 3258.)

Court of Civil Appeals of Texas. Amarillo. July 10, 1929.

Rehearing Denied Sept. 11, 1929.

Marvin H. Brown, of Forth Worth, for appellant.

Payne, Cade & Hart, of Amarillo, for appellee.

HALL, C. J. The appellee filed this suit, based upon a hail insurance policy issued him by the appellant, to recover damages alleged to have resulted to his wheat. The policy was made an exhibit to the petition. He alleges that he paid a premium of $375, for which consideration the appellant insured his wheat crop against loss or damage by hail to the amount of $3,250; that he owned a five-sixths interest in the wheat crop insured. He further alleges that on the 3d day of June, 1928, while the policy was in force, and at a time when more than 75 per cent. of said wheat was "jointed" and more than 10 inches high, hail fell upon the wheat, resulting in damage to the extent of 90 per cent. of its value, and that another hail storm on the 15th day of June, 1928, while the policy was in force, damaged his crop to the extent of 20 per cent. of its then remaining value; that again, on the 20th and 21st days of July, his crop was further damaged by hail to the extent of 26 per cent. of its then remaining value, and that on the 22d day of August, it was again damaged to the extent of 32 per cent. of its then remaining value; that his five-sixths interest in the crop prior to the several hail storms was of the reasonable value of $6,500; that he gave appellant the required notices and demanded payment, which was refused; that on or about the 8th day of July, the appellant repudiated the contract of insurance and denied all liability thereunder. He prays for judgment in the sum of $2,990 and for costs.

· The appellant answered by general demurrer, special exceptions, general denial, and specially alleged: That, in order to obtain the insurance, the appellee made a written application for the policy, which was a part of the contract, and contains, amongst others, this question: "Has the above described crop been damaged by hail?" To which the appellee answered, "No." That the application further contains the following agreement:

"I also agree that this application is made with specific reference to the policy, stipulations and agreements, statements and representations above contained and also as printed on the back hereof, a duplicate of which application is to be attached to my

policy of insurance issued by the Northwestern Fire & Marine Insurance Company and in addition to the printed portion of said policy, constitutes my contract with said company."

"This policy of insurance is based upon the statements, representations and descriptions contained in the insured's application, of even number herewith, which is hereby made a part hereof."

Appellant further pleaded: That section 8 of the policy is as follows:

"This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or if the interest of the insured in the crops covered herein be not truly stated herein or in case of any fraud or attempted fraud or false swearing by the insured touching any matter relating to this insurance or subject thereof whether before or after a loss."

That the defendant is not liable to plaintiff, because plaintiff falsely and fraudulently represented in his said application that the wheat crop had not been damaged by hail, when in truth and in fact a terrific hail storm swept over the immediate neighborhood in which plaintiff's lands lie on the 14th day of May, 1928, and on the 16th day of May, 1928, both storms seriously damaging the plaintiff's crop and practically destroying said crop prior to the 2d day of June, 1928, when plaintiff made the application for insurance above stated. That such fraudulent statements were material to the risk, and but for which defendant would not have issued the policy. It is further alleged that plaintiff represented that he had 260 acres planted to wheat, when in truth and in fact he had less than 200 acres in the tract insured, which representations were fraudulent.

By supplemental petition, plaintiff alleged: That prior to the signing of the application he informed the defendant, through its authorized agent, G. W. Lash, that some hail had fallen on the wheat, but that it was his belief that the wheat was not damaged thereby, and before signing the application plaintiff requested the said agent, Lash, to make an investigation and ascertain whether or not said wheat was damaged. That Lash did investigate and satisfied himself in regard to all matters inquired of in the application and after such investigation, told plaintiff he had made an inspection and prepared the application for plaintiff, inserting therein all answers which the application contains, and omitting answers to all unanswered questions, and then told plaintiff to sign the application as he had prepared it from said agent's own knowledge and investigation and knew it to be correct. That both parties entered into the contract of insurance with full knowledge as to the then existing condition of the crop, as well as knowledge of the fact that hail had previously fallen on the crop.

Plaintiff denies that there was any damage to the wheat crop prior to the signing of said application, and alleges that, if the same had been damaged, the defendant, through its agent, Lash, had waived any and all misstatements in plaintiff's answers to the questions propounded to him and shown in the application, by investigating and acquainting himself with all the facts relative thereto, by reason of which the defendant is estopped to set up any such alleged misrepresentations as a defense.

By supplemental answer, defendant filed numerous exceptions to plaintiff's supplemental petition, which were overruled.

The case was submitted to a jury upon special issues, in response to which it was found that the wheat field contained 260 acres; that the wheat was damaged by hail while the policy was in force to the extent of 90 per cent. per acre; that the plaintiff did not knowingly conceal or cause to be concealed from, or make or cause to be made, any false representations with reference to any material fact concerning the condition of the wheat before or when the policy was issued; that the wheat had not been damaged by hail, either on May 14 or 16, 1928, and that the defendant would have issued the policy if it had known then that the wheat had been damaged by hail on either the 14th or 16th of May, or on both days.

From a judgment in plaintiff's favor for $2,925, and costs, this appeal is prosecuted.

■ It is first contended that, because the policy contains the above-quoted agreement, the appellant will not be bound by any act or statement made by its soliciting agent, Lash; that plaintiff cannot be heard to plead that he advised Lash that hail had fallen on the wheat crop and invited said agent to investigate its condition; that such agent made such investigation and that the company entered into the contract with full knowledge of all the facts, which do not constitute an estoppel. In this connection, it is further urged that, because Lash was only a soliciting agent, he was without authority to waive defendant's rights or bind defendant by any act or statements of his; that such acts and statements of Lash are without actual or apparent authority and the defendant is not bound thereby.

Rev. St. 1925, art. 5056, provides that any person who solicits insurance, or takes any application for insurance, or who delivers a policy, or who shall examine or inspect any risk, or receive or collect any premium, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any insurance company, "shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter." Under the terms of

this statute, in the light of the facts. Lash is unquestionably the agent of appellant as relates to appellant's liabilities, considering the defenses pleaded.

Lash testified that Allred told him in the first conversation that there had been some hail out there, but that he did not think the wheat had been damaged, and asked him to investigate and decide about it; "that there had been some hail on the land in question, which was late wheat, and insisted that I investigate and see how much I could write him on it, and what sort of a proposition I would make with reference to writing it." He further stated that he did investigate it; that he drove down the road and it looked good to him; that he made inquiry of some of the neighbors about it before he went out, and the information indicated that the wheat looked as good as he found it; that he afterwards inquired of other parties around there, and that his investigation disclosed the fact that late wheat, like the wheat in question, at that time had not been damaged to any appreciable extent; that, when Allred came to have the policy written, he asked witness if he had decided about writing up the policy, and that Allred suggested to witness, if the latter thought there had been any damage, to specify in the application what amount of damage the wheat had sustained, but that he did not think it had been damaged, and witness stated he agreed with him that it had not been damaged, and that, if he had thought it was, he would not have written it; that he estimated some other wheat in that neighborhood as having been damaged 2 per cent. He stated that his duties required him to examine a field of wheat and to write it up, if he saw fit to do so. He further testified:

"When I looked at this wheat, I came down on the west road from the schoolhouse down to the [appellee's] house there. I did not go any farther than Mr. Allred's house north. When I got there, I just turned and looked out at the wheat, and drove up a little piece, where I could turn around, and turned around and went back."

He further stated, on further examination, that he did not get out of his automobile, but looked out over the field. It looked like good wheat. "I figured, the way it looked, it had not been damaged. I just used my judgment on it."

Several other witnesses testified with reference to the extent of the damage to late wheat by the two hailstorms of May 14th and 16th, respectively, and in part corroborated the agent Lash, with reference to the extent of the damage.

K. T. Martin, the general agent for appellant's hail department in the state of Texas for about five years, testified "that the agent, Lash, had authority to solicit the insurance, to fill out blank applications and send them in, and to receive from the applicant a note for the premiums, and further to deliver the policy to the applicant; that he also had authority to refuse to take an application; that he had a right to go out and see a man's field, and, if it had been hailed out, he would have the right to turn down an application on that account."

The agency contract between appellant and Lash was introduced in evidence, which stipulates that Lash was responsible to the company for the genuineness and correctness of all applications he takes for insurance, and in which he agrees that he will not make any misrepresentations or use any fraudulent means to obtain applications for insurance. By the terms of the contract, Lash was bound in the sum of $1,000 for the faithful performance of his duties.

■ After hearing the testimony, the jury, in the exercise of its discretion, found that the May hailstorms had not damaged the wheat. The evidence is uncontroverted that the wheat had been planted late, and in May had not commenced to "stem," and that wheat in that stage of its growth would not ordinarily be seriously damaged by hail. We are not prepared to set this finding aside, and hold that the answer made to the question, "Has the above-described crop been damaged by hail?" was untrue. But, in any event, it appears from the testimony of Lash and the general agent, Martin, that Lash had authority to inspect the risk and to bind the company by his judgment. The fact that he did inspect it, and concluded that the hail had not done any appreciable damage, is undenied. Moreover, he inspected it at the request of Allred before the application was made, and he was asked to inspect it because, as stated by Allred, there had been some hail in that neighborhood. Allred told him, if he thought it had been damaged, to make the proper deductions. This testimony is wholly inconsistent with any charge of fraud and misrepresentation as against Allred.

Having been authorized to make the inspection and having made it to his own satisfaction, we think the company is estopped from defending on the ground that Allred's statement in the application that the wheat had not been damaged by hail is false. Allred made no effort to conceal any fact, and invited the fullest investigation of the conditions before signing the application. We overrule this contention. U. S. Fidelity & Guaranty Co. v. Taylor (Tex. Civ. App.) 11 S.W.(2d) 340; Mecca Fire Insurance Co. v. Smith (Tex. Civ. App.) 135 S. W. 688; Delaware Insurance Co. v. Hill (Tex. Civ. App.) 127 S. W. 283; Crescent Insurance Co. v. Camp, 71 Tex. 503, 9 S. W. 473; Amarillo National Life Insurance Co. v. Brown (Tex. Civ. App.) 166 S. W. 658; German Insurance Co. v. Everett, 18 Tex. Civ. App. 514, 46 S. W. 95;

Southern Underwriters v. Jones (Tex. Civ. App.) 13 S.W.(2d) 435 and authorities cited; Law v. Texas State Mutual Fire Insurance Co. (Tex. Com. App.) 12 S.W.(2d) 539.

The issues here involved are more fully discussed in 2 Couch, Ency. Ins. Law, §§ 524, 525, and the general rules as there declared are in accordance with our holding herein. The court did not err in refusing to direct a verdict for the appellant.

■ The next contention to be considered is that the court imposed too great a burden upon appellant by the special issue which inquired whether plaintiff knowingly concealed or caused to be concealed or made or caused to be made any false representations to the company or its agent of any material fact about the condition of the wheat before or at the time the policy was issued.

In the light of the entire record, this was an immaterial issue, and, if error, is harmless. The testimony of appellant's agent shows that Allred made no concealment whatever, and the finding of the jury that no false representation was made is amply supported by the evidence; but, if it could be successfully contended that false representations had been made as to the condition of the wheat resulting from the May hailstorms, the appellant is estopped, as hereinbefore shown, by the fact that its agent, before writing the policy, investigated for the company and had actual notice of the condition of the crop.

The finding of the jury that there were 260 acres of wheat in the tract covered by the policy is supported by sufficient evidence. Appellant had the right to make an actual survey of the land, and ascertain the exact acreage, prior to the time the policy was written, as well as any other time preceding the trial. This it failed to do. The number of acres is shown to have been an estimate, and, so far as any direct evidence is concerned, it is approximately correct.

■ The further contention is made that, because the jury found, in answer to subdivision A of issue No. 3, that the wheat was not damaged by the May hailstorms, and further answered subdivision D of special issue No. 3 in the affirmative, there is an irreconcilable conflict in the verdict. The answer to subdivision A is, in effect, that the wheat was not damaged by the hailstorms of May 14th and 16th. The answer to subdivision D, to the effect that the appellant would have issued the policy, if it had known that the wheat was damaged by said hailstorms, is wholly immaterial, since the evidence shows that the policy was issued after its agent, by personal inspection and inquiry, had ascertained that there was no appreciable damage. This contention is without merit.

■ The court, upon objection, excluded the testimony of the witness T. I. Bonds, offered for the purpose of showing that the May hailstorms had damaged a wheat crop joining the appellee's wheat on the north and another wheat crop joining it on the east. The uncontroverted evidence shows that, at the time these storms occurred, the appellee's wheat had not commenced to "stem," and that wheat in that stage of its growth is not seriously damaged by hail. It does not appear that the wheat on the north and on the east was in that stage of growth. On the contrary, because they were damaged, it may reasonably be inferred that they had commenced to stem and were in a condition to be damaged by hail. If the evidence was admissible, in any event it should not have been admitted until appellant had shown by preliminary testimony that these two fields of wheat were also planted late, and in about the same condition of growth as appellee's wheat. Having failed to lay this predicate, the testimony was inadmissible.

■ The appellee did not sue to recover damages to the entire wheat crop. His action was to recover for the damages resulting to his interest, which is alleged to be five-sixths of the entire field, and it is clear that, in estimating his damages, the jury took into consideration only his interest, and the judgment is therefore not excessive.

We find no reversible error, and the judgment is affirmed.