### SOUTHERN UNDERWRITERS v. DAVIS et al.

### No. 1902.

Court of Civil Appeals of Texas. Eastland.
May 5, 1939.

Rehearing Denied June 2, 1939.

Benbow, Saunders & Holliday, of Dallas, for plaintiff in error.

Grindstaff, Zellers & Hutcheson, of Weatherford, and Allen D. Dabney, of Eastland, for defendants in error.

GRISSOM, Justice.

This is an appeal from a judgment obtained in a workmen's compensation case by Mrs. Ollie Davis and D. A. Davis, Jr., the wife and child, and sole beneficiaries, of D. A. Davis, deceased, against the Southern Underwriters, the alleged insurance carrier of the Oilfield Transportation Company, a partnership, composed of J. S. Brimberry and F. G. Yonker. For convenience, the Davis's will be referred to as plaintiffs, the Southern Underwriters as defendant, the Oilfield Transportation Company, as Transportation Company, and Motor Carriers Insurance Agency, as Insurance Agency.

If not shown by the undisputed evidence, the testimony is sufficient to support a finding of the following facts: D. A. Davis was killed in the course of his employment by the Oilfield Transportation Company, which was a partnership composed of the persons above named. Davis was killed on February 24, 1936, while hauling oil field equipment for the Transportation Company. The policy of insurance upon which suit was brought by plaintiffs was issued by defendant on April 16, 1935, and was to expire, by its own terms, April 16, 1936. It was issued in the name of J. S. Brimberry, doing business as the Oilfield Transportation Company. The Transportation Company was organized in 1932. On March 10, 1932, the Transportation Company filed with the Railroad Commission of Texas an application for a permit to operate as a special commodity carrier. The application recited it was a firm, located at Ranger, Texas, and that its members consisted of J. S. Brimberry and F. G. Yonker. The application was granted on September 15, 1934. Thereafter, the permit was amended so as to authorize the Transportation Company to transport household goods, oil field equipment, etc., to and from all points in Texas. This permit was in force at the time Davis was killed. On April 16, 1934, defendant issued a Workmen's Compensation policy to J. S. Brimberry, doing business as the Oilfield Transportation Company. This policy was effective until April 16, 1935. To obtain the special commodity carrier permit the law required the Transportation Company to obtain a Workman's Compensation policy for the protection of its employees, and to have such policy filed with the Railroad Commission. Said policy issued by defendant contained an indorsement, in part, as follows:

"Inasmuch as all or a part of the employees of this employer are engaged in either motor truck or motor bus operations in the State of Texas under the Supervision of the Railroad Commission; and

"It being understood that the carrying of Workmen's Compensation insurance on said employees so occupied is made compulsory by law;

"It is hereby understood and agreed that Condition B. of this policy is hereby enlarged to include the provision that written notice of cancellation shall be given to the Railroad Commission of Texas not less than ten days prior to date cancellation shall become effective."

The policy sued on is Policy "WC-994-1", dated April 16, 1935, and effective for one year from its date. It was filed with the Railroad Commission March 21, 1935. It contains the same indorsement as to notice of cancellation as did the immediately preceding policy issued by defendant to the Transportation Company.

There was evidence that before and after said permit was obtained by the Transportation Company, all of its Workmen's Compensation Insurance policies were procured, and all matters pertaining thereto handled, through Motor Carriers Insurance Agency of Austin, of which George Wiebusch was manager. Said Insurance Agency made out the applications; upon receipt of them by the Transportation Company, the applications were

signed by J. S. Brimberry, who was its manager. The applications were then returned to the Insurance Agency, the policy issued by defendant and delivered to the Insurance Agency. At the close of each month said Insurance Agency would send to the Transportation Company for defendant a blank upon which the payroll would be calculated by the Transportation Company, and the report of the monthly wages paid by the Transportation Company to its employees, and the premium due thereon, were then sent by the Transportation Company to said Insurance Agency for defendant. As illustrative of the matter just mentioned, Defendant's Exhibit 1 is, in part, as follows:

"Pay Roll Report
The Southern Underwriters
Sterling Building
Houston, Texas

Policies

Motor Carrier Insurance Agency

W.C. 994–1

Assured      J. S. Brimberry
Oilfield Transportation Co.

. . . . . . . . . . . .

Assured Oilfield Transportation Company
By (Signed)   J. S. Brimberry."

Such a report was made for the month of November, 1935. The Transportation Company, in remitting the premium for said month, sent an insufficient amount, whereupon the following letter was sent and received, as indicated:

"December 11, 1935
"Oilfield Transportation Company
P. O. Box 1331
Ranger, Texas.

"Gentlemen:
"Re: WC 994
"We are today in receipt of payroll report under your compensation policy for the month of November.

"We note that your payroll was $753.-46, which makes an earning premium of $89.29 and as your check was in the sum of $83.52, there is a balance of $5.77 due under this report, as per statement attached.

"Thanking you, we are
"Very truly yours,
"Motor Carrier Insurance Agency
"By Geo. H. Wiebusch."

Upon receipt of said letter, the Transportation Company sent to the Insurance Agency a check for $5.77, signed Oilfield Transportation Company, by J. S. Brimberry, and countersigned, F. G. Yonker. Other monthly payroll report blanks were sent by the Insurance Agency, acting through its general manager, Wiebusch, to the Transportation Company, which latter company was addressed as "Gentlemen." The letter head of the Motor Carrier Insurance Agency, among other things, showed "Geo. H. Wiebusch, General Mgr." and "Elmer G. Gunn, Claim Adjuster." There were other checks issued in payment of the monthly Workmen's Compensation premiums due defendant by the Transportation Company, signed by J. S. Brimberry and countersigned by F. G. Yonker. All premiums paid on the policy sued on, and all prior policies and policies issued subsequent thereto, issued to the Transportation Company, or to J. S. Brimberry, doing business as Oilfield Transportation Company, were paid by the partnership. During all of said time, J. S. Brimberry, individually, had no employees, neither did he have a permit, as an individual, from the Railroad Commission of Texas to operate the business in which he was engaged. He was operating exclusively under the authority of the permit granted to the Oilfield Transportation Company, a partnership. The premiums paid on said policies "were paid and based upon the wage earning of the employees of the Oilfield Transportation Company and no other." The basis for payments of premiums by said partnership included the wages paid to D. A. Davis, deceased. The policy upon which suit was brought was procured not only for the protection of said partnership, and its employees, but to comply with the requirement that it be filed with the Railroad Commission "against" its permit issued by the Railroad Commission, of which fact defendant and its agents had notice.

There was evidence that Elmer G. Gunn, Claim Adjuster for the Insurance Agency, was acquainted with Mr. Brimberry and Mr. Yonker. That he was in the office of said company at Ranger in 1934, for the purpose of adjusting a claim by an employee of the Transportation Company against the defendant; that defendant was then carrying the Workmen's Compensation insurance for the Oilfield Transportation Company; that at said time, Mr. Brimberry "made him acquainted with Mr. Yonker, as a partner in the firm of the Oilfield Transportation Company." This was before the defendant issued the policy

sued on dated April 16, 1935, and while Gunn was adjusting a claim on behalf of defendant. There were several employees of the Transportation Company injured while defendant was carrying its Workmen's Compensation Insurance. Reports thereof were made by said Transportation Company to defendant, and, with such knowledge, defendant made settlements with injured employees of the partnership for their claims. As an example, indicating the manner in which such matters were handled, we here set out, in part, the report of an accident and a letter from the defendant to the Transportation Company, as follows:

"1. Name of employer Oilfield Transportation Company

Employer

2. Address: No. and St. 211 South Rusk
City: Ranger, Texas
3. Insured by the Southern Underwriters, Houston, Tex.
4. Give nature of business (or article manufactured)  Transportation
.............
Date of this report March 9th
Firm name Oilfield Transportation Company
Signed by J. S. Brimberry
Official Title Mgr.."

"Southern Underwriters Corporation
Attorney
The Southern Underwriters
Organized July 1907
Sterling Building
Houston, Texas
March 6, 1936
Oilfield Transportation Company
Ranger, Texas
Gentlemen:
Claim No. ——
Bob Earnest v. Oilfield Transportation Co.
Date of Accident 11/19/35
In connection with the captioned claim, please furnish us with the report indicated by an x so that this claim may be given our prompt attention."

The Workmen's Compensation policies required of the Transportation Company, by law, during the years 1934, 1935 and 1936, insuring its employees were issued by defendant, delivered to Wiebusch, or the Motor Carriers Insurance Agency, who deposited them with the Railroad Commission as required by law, "against" the permit issued by said Commission to the Transportation Company, which permit showed the Oilfield Transportation Company to be a partnership composed of Brimberry and Yonker.

Mr. Bell, employee of the Railroad Commission, whose duty it was to see that Workmen's Compensation policies, pro-

tecting the employees of its permit holders were filed with the Railroad Commission, testified, in substance, that "some few days prior to February 27, 1936," he called the attention of Mr. Wiebusch to the fact that the Workmen's Compensation Insurance policy issued by defendant to the Transportation Company showed the name of the employer to be J. S. Brimberry, doing business as Oilfield Transportation Company, when, in fact, the Oilfield Transportation Company was a co-partnership, composed of Yonker and Brimberry. He asked Wiebusch to have defendant issue an indorsement for attachment to the policy, for the purpose of correcting and amending the name of the employer to read J. S. Brimberry and F. G. Yonker, doing business as the Oilfield Transportation Company. Wiebusch promised that he would take the matter up at once with defendant. Thereafter Wiebusch wrote the Railroad Commission, with reference to the Workmen's Compensation policy of the Transportation Company, and with reference to Mr. Bell's conversation with him, that the "indorsement requested by him, under the above numbered policy, will be forwarded as per attached letter from The Southern Underwriters * * *." The attached letter from defendant was, in part, as follows:

"Gentlemen: We acknowledge your letter of February 25th and are, accordingly, filing the change of name indorsement with the Casualty Insurance Commissioner for approval.

"Promptly upon its return to us, we will forward it to you for filing with the Railroad Commission."

"Very truly yours,
"Southern Underwriters Corporation
"By W. V. Long
"W. V. Long, Underwriter."

On March 27, 1936, the Director of the Motor Transportation Division of the Railroad Commission wrote defendant with reference to the Commission's permit to the Transportation Company, quoting the foregoing letter and stating that he was unable to locate any record of having received the requested indorsement and asking the defendant to forward the indorsement to the Commission at once.

On March 31, 1937, Bryan Bell, Assistant Director of the Motor Transportation Division of the Railroad Commis-

sion, wrote defendant to the effect that the Railroad Commission's ·permit was issued to Oilfield Transportation Company, composed of J. S. Brimberry and F. G. Yonker; that Mr. Brimberry had never owned the permit issued to the Oilfield Transportation Company; that said company was a partnership; that he was informed defendant did send a copy of the indorsement for the policy, changing the name of the assured to the name of the two partners, doing business as the Oilfield Transportation Company, instead of J. S. Brimberry, doing business as the Oilfield Transportation Company, to the Industrial Accident Board of Texas, and calling attention to the defendant's letter of February 26, 1936, in which defendant stated it would file with the Railroad Commission such indorsement for its policy issued to the Oilfield Transportation Company and held by the Railroad Commission.

There was evidence that the Industrial Accident Board, on February 27, ·1936, received such indorsement, ·or a copy thereof, which indorsement was attached to and made a part of the notice that J. S. Brimberry, doing business as Oilfield Transportation Company, had become a subscriber under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. There was no written signature attached to the indorsement. Such indorsement, so received, was as follows:

"The Southern Underwriters Endorsement

"Attached to and forming part of policy No WC-994-1 issued by subscribers at the Southern Underwriters Houston, Texas

"To J. S. Brimberry dba Oil Field Transportation Co.

"It is hereby understood and agreed that the name shown in Item 1, of the policy to which this endorsement is attached is amended to read as follows:

"'J. S. Brimberry and F. G. Yonkers dba Oil Field Transportation Co.'

"Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the above mentioned policy other than above stated.

"This endorsement shall take effect April 16th, 1935 12:01 o'clock A. M., Standard Time. At Assured's address, and shall terminate simultaneously with said policy.

Dated at Houston, Texas, this 26th day of February 1936.

"Southern Underwriters Corporation
"Attorney-in-Fact
"By ——————————————."

There was evidence to the effect that defendant customarily filed its indorsements with the Industrial Accident Board without written signature attached thereto. Defendant, learning of the death of Davis, declined to file the indorsement with the Railroad Commission.

The Workmen's Compensation Insurance policy issued by defendant to the Transportation Company, which was in effect at the time of Davis's death, and which, by its terms, was to expire April 16, 1936, was never canceled by defendant. It continued to run until its expiration date and was then renewed by the defendant. During all of said time the premiums were paid by the partnership and received and retained by defendant, with the knowledge, through its agents, Wiebusch, Gunn and Motor Carriers Insurance Agency, prior to February 20, 1936, that the Oilfield Transportation Company was a partnership, composed of Brimberry and Yonker, and that the Workmen's Compensation policy was procured and intended for the protection of the partnership's employees, and on and after said date, at least, the defendant had such information, through its officers in charge of its home office. The circumstances indicate that, so knowing, defendant executed indorsement for its policy showing the true situation and sent a copy thereof to the Industrial Accident Board.

The court submitted to the jury, among others, the following special issues which were answered as shown:

"No. 4. Do you find from a preponderance of the evidence in this case, that at the time J. S. Brimberry signed the application for workmen's compensation insurance on the 16th day· of April, 1935, he intended thereby and believed that he was applying for insurance to cover the employees of said partnership? Answer: Yes.

"No. 5. Do you find from a preponderance of the evidence that J. S. Brimberry and F. G. Yonker, at all times relied upon the policy of workmen's compensation insurance No. 994-1 being for the benefit of the said co-partnership as employer and the employees of said co-partnership in the trucking operation in which said co-

partnership was engaged during the term of said policy? Answer: Yes.

"No. 6. Do you find from a preponderance of the evidence in this case, that during the life of the workmen's compensation insurance policy in question and prior to February 24, 1936, the defendant Southern Underwriters had knowledge that said J. S. Brimberry and F. G. Yonker looked to said policy as coverage for themselves as employer and their workmen as employees in the trucking business? Answer: Yes.

"No. 7. If you have answered the above and foregoing special issue number six 'yes', then answer this special issue: Do you find from a preponderance of the evidence in this case, that the defendant Southern Underwriters having such knowledge, if any, you have found in answer to special issue number six continued thereafter to collect and retain insurance premiums paid thereon by the co-partnership? Answer: Yes.

"No. 8. Do you find from a preponderance of the evidence that the Southern Underwriters by the issuance of the policy of insurance in question, being Policy No. W C 994-1 intended to provide compensation insurance for the employees of the co-partnership composed of F. G. Yonker and J. S. Brimberry doing business as the Oil Field Transportation Company? Answer: Yes.

"No. 9. Do you find from a preponderance of the evidence that the policy of workmen's compensation insurance No. W C 994-1 dated April 16th, 1935, issued in the name of J. S. Brimberry DBA Oil Field Transportation Company was issued for the use and benefit of the co-partnership composed of F. G. Yonker and J. S. Brimberry? Answer: Yes.

"No. 10. Do you find from a preponderance of the evidence that the Southern Underwriters knew, prior to the 24th day of February 1936, that the policy of insurance No W C 994-1 dated April 16, 1935, and issued by it to J. S. Brimberry dba Oil Field Transportation Company, had been deposited with the Railroad Commission of the State of Texas, for the protection of the employees of the said Oil Field Transportation Company, a co-partnership composed of F. G. Yonker and J. S. Brimberry? Answer: Yes.

"No. 11. Do you find from a preponderance of the evidence that the Southern Underwriters did ·on or about February 26, 1936, transmit to the Industrial Accident Board at Austin, Texas, for the purpose of being filed, the indorsement to said policy No W C 994-1 said indorsement providing in substance that the name of the insured be changed and amended from J. S. Brimberry to J. S. Brimberry and F. G. Yonker doing business as Oil Field Transportation Company? Answer: Yes.

"No. 12. (a) Do you find from a preponderance of the evidence that on or prior to February 26, 1936, Bryan Bell called George Wiebusch of the Motor Carriers Insurance Agency, and told him, in substance that the policy issued by The Southern Underwriters showed the name of the employer to be J. S. Brimberry doing business as Oil Field Transportation Company, when in fact, the Oil Field Transportation Company was a co-partnership composed of Mr. Yonker and Mr. Brimberry? Answer: Yes.

"(b) If you have answered subdivision (a) of this special issue Number twelve 'yes', then answer this subdivision: Do you find from a preponderance of the evidence that in said conversation, if any, between the said Bell and the said Wiebusch the said Bryan Bell asked that the said Wiebusch have the Southern Underwriters to issue an indorsement for attachment to the said policy ·for the purpose of correcting and amending the name of the employer to read J. S. Brimberry and F. G. Yonker dba Oil Field Transportation Company? Answer: Yes.

"(c) If you have answered the two foregoing subdivisions 'yes' then you will answer the following: Do you find from a preponderance of the evidence, that such information and request was by said Wiebusch transmitted to the Southern Underwriters at Houston? Answer: Yes.

"(d) If you have answered the foregoing in the affirmative, then you will answer the following: Do you find from a preponderance of the evidence that after the said Southern Underwriters acquired said knowledge and request, if it did, it continued to collect and retain the premiums on the said policy No W C 994-1? Answer: Yes.

"(e) Do you find from a preponderance of the evidence that in keeping with said request, if any, of the said Bryan Bell, the said Southern Underwriters transmitted to the Industrial Accident Board of the State of Texas, the indorsement to

said policy changing the name of the insured from J. S. Brimberry dba Oil Field Transportation Company, to F. G. Yonker and J. S. Brimberry doing business as Oil Field Transportation Company?. Answer: Yes.

"No. 19. Do you find from a preponderance of the evidence that the description given by the word 'individual' in the application for Policy No W C 994-1 was inserted therein by mutual mistake of the respective parties who acted for Oil Field Transportation Company and the Southern Underwriters in the matter of placing the proposal to issue the compensation policy before the Southern Underwriters? Answer: Yes."

Briefly stated, defendant's contentions under its 162 assignments of error and propositions relative thereto are that the judgment should · be reversed and judgment rendered for defendant because D. A. Davis was not an employee of the assured at the time he was killed, and that there is no proper pleading, evidence, issues or findings of the jury authorizing a reformation of the policy to cover D. A. Davis's employers, or to estop defendant from setting up that Davis was not covered by the policy sued on; and that the judgment should be reversed because the proper wage rate was not established, because, it is contended, the employment of Davis and other employees of the Transportation Company of the same place was irregular and intermittent, so that Davis's average weekly wage should have been determined by dividing his actual earnings for the preceding year by 52, since, due to the nature of the work and the N. R. A. Code, Davis had not worked but about 200 days during such year, and that the evidence is insufficient to authorize a judgment for a lump sum.

In Traders & General Insurance Co. v. Rogers, Tex.Civ.App., 119 S.W.2d 679, the claimant was employed as a baker by the New York Bakery. The policy showed the insured to be "Employer, Geo. Kogan, d. b. a. New York Bakery." Plaintiff alleged he was injured in the course of his employment with the New York Bakery operated by Geo. Kogan, individually. Alternatively, he alleged that, if mistaken, then said New York Bakery was a co-partnership, composed of Geo. Kogan, Gus Kogan and John Bokoures; that the policy was intended to cover all employees of the New York Bakery, even though owned by said partnership; that the defendant was apprised of such ownership and estopped to claim its policy did not cover employees of the partnership. The Insurance Company alleged that its policy was issued to Kogan, as an individual, doing business as the New York Bakery, upon his application therefor, and denied that it issued a policy to the parties composing the partnership of New York Bakery, and denied that it had authorized its agent to do so. The undisputed evidence showed that the named parties constituted a partnership doing business under the firm name of New York Bakery. Under apparently less evidence than is found in the instant case, the Court of Civil Appeals sustained the jury's findings that it was the intention of the parties to the contract that the insurance policy issued was to cover the employees of the partnership. A writ of error has been granted in this case, but the ground upon which the writ was granted has no reference to the question here discussed.

In New Amsterdam Casualty Co. v. Harrington, Tex.Civ.App.,· 11 S.W.2d 533, 536,. writ dismissed, the injured employee, Harrington, was injured in the course of his employment by a co-partnership, composed of Gragg and others. The insurance policy sued on gave the name of Harrington's employer as Dr. L. F. Gragg, an individual. Harrington alleged he was injured while engaged in the course of his employment by the partnership, and that the fact of partnership was known . to the insurance company's agent before the policy was issued, and that it was the intention of the insurer to insure the employees of the partnership. The court said: ·

"It is our conclusion that it was not necessary to reform the wording of the policy in the respect noted, in order to admit. proof of the real intention and understanding of the parties thereto. The proof introduced to show that before the issuance of the policy the insurance company knew that Harrington was working for the partnership firm composed of Gragg and his associates, and that it was the intention of the insurer to insure all employees of that firm, related merely to the identity of the employer, which, according to the finding of the jury, was known to · the insurer as the partnership firm. Unquestionably, the insurance company intended that the policy which it issued! should cover injuries sustained by the em--

ployees of the insured, which, according to the evidence and findings of the jury, it knew was a partnership composed of Gragg and his associates. See 2 Elliott on Contracts, § 1664; 1 Williston on Contracts, § 302; 3 Williston on Contracts § 1599; McCord-Collins Co. v. Pritchard, 37 Tex.Civ.App. 418, 84 S.W. 388, writ of error refused; Security [Union] Casualty Co. v. Hunt (Tex.Civ.App.) 294 S.W. 695.

"Appellant, among other defenses, specially pleaded the provision in the policy that none of its provisions could be waived or altered except by indorsement thereon signed by the president, or vice president, or secretary, or his assistant, and that notice to any other agent of any fact should not effect a waiver or change in any part of the contract. That defense was not available, since the proof conclusively showed that Cravens, Dargen & Co. were the general agents of the insurer, and that they represented the company in the negotiations with Dr. Gragg and, with full notice of all the facts found by the jury, delivered the policy and collected for the insurer the premiums thereon. L. & L. & Globe Ins. Co. v. Ende, 65 Tex. 118; Wagner v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S.W. 569; St. Paul Fire Ins. Co. v. Kitchen (Tex. Com.App.) 271 S.W. 893; Am. Central Ins. Co. v. Buchanan-Vaughan Auto Co. (Tex.Com.App.) 271 S.W. 895."

In Traders & General Ins. Co. v. Pool, Tex.Civ.App., 105 S.W.2d 492, 494, the suit was by the beneficiaries of Pleas Pool, who was killed in the course of his employment by Fain Johnston. Application for a Workmen's Compensation policy was made on behalf of "Johnston Bros., Drilling Contractors" and the policy written accordingly. Plaintiffs alleged that Fain Johnston was the employer and that the policy was issued for his account, although, through mutual mistake, the application for insurance and the policy itself was made to run in the name of "Johnston Bros., Drilling Contractors." The policy was obtained through an insurance agency which "firm was soliciting agents for the plaintiff in error, with authority to solicit insurance from customers, prepare and send in applications therefor and receive the written policies, deliver same to the insured parties, and collect the premiums thereon." Such agency was told that such insurance was for Johnston Brothers; that

Fain Johnston had a contract to drill some oil wells and that his brother, Sidney Johnston, would drill some wells for the same parties later. It was suggested by a local insurance agency to plaintiff-in-error's soliciting agents that the policy be issued for Johnston brothers. There was in fact no partnership, the Johnston brothers being merely engaged in the same kind of business. The court held, under such situation, where reformation of the contract was an incidental matter and the suit was basically for recovery upon the contract, that it was not requisite that the policy in specific terms be reformed. The court further held that the knowledge of the soliciting agent of the fact that it was intended for the policy to cover the employees of Fain Johnston, such knowledge of such agent being acquired while acting as such soliciting agent in obtaining the application upon which the policy was issued, was the knowledge of the company issuing the policy. We quote from the opinion of Justice Stokes, as follows:

"It will be noted that the authority of the insurance agency was to take information and to file such information on proper application forms with the home office of the company. It is a familiar rule of law that, in general, the principal is charged with knowledge possessed by his agent when the agent is acting within the scope of his authority. It has been said by the courts in many cases that this rule, however, is restricted in transactions conducted by a soliciting agent, and the limitation has been well established that a soliciting agent is merely a special agent and has authority only to solicit business, take applications for insurance policies, in cases of insurance agencies, and perform other acts incident to that duty. This restriction has worked some confusion into the decisions of the courts in opinions on cases involving these special or soliciting agents, and in some of them are found pronouncements which seem to hold that a soliciting agent has practically no authority to bind his principal in any respect whatever. The rule means just what it says, viz., that the principal is charged with knowledge possessed by his agent when the agent is acting within the scope of his authority and, under the plain provisions of the rule, he is charged with knowledge possessed by a soliciting agent when that agent is acting within the scope of his authority in just the same manner

as he is charged with the knowledge of any other character of agent. The restriction is as to the scope of the agent's authority, not as to the nature of the knowledge. If a soliciting agent receives information concerning those things that are connected with his duties to his principal, his information relative to them is just as much the information of his principal as would be the information of any other agent. In this case, the agent, Panhandle Insurance Agency, had authority from plaintiff in error to take information and file such information on proper application forms with the company. That information included the ascertainment of the name in which the policy was to be written, the operations of the employer to be covered, and other matters which were to form the basis for the policy which the insurance company would execute and forward to its agent for delivery to the insured. Under the evidence in the case and the finding of the jury, the Panhandle Insurance Agency had all the information that any one else had with reference to the relationship of Fain and Sidney Johnston, and the agent was not told by any one that they were partners. The agency was informed at the time the application was made that Fain Johnston was going to drill three or four wells for the Du Mar Oil & Gas Company, and that Sidney Johnston was going to drill some wells later on for the same concern, and it was suggested that the policy be written in the name of Johnston Brothers in order to save the making of a separate application. The application was, as found by the jury, written by some. one connected with the Panhandle Insurance Agency, signed by some one in their office, and forwarded to the company, and the policy involved in this case was issued by the company and returned to its agent at Pampa for delivery. There was no changing of the terms of the policy, nor was the company bound by any agreement not expressed in the policy and not fully covered by the application as interpreted by the agent who had authority from the plaintiff in error to take it. The information given the agent was given at the very time the application was written and consisted of the very items of information which the company needed in order to write the policy and, to obtain which information, it had appointed the agent. The agent was, therefore, acting within the scope of its authority in obtaining the information, assenting to the writing of the policy in the name of Johnston Brothers, Drilling Contractors, and forwarding the application to the company.

"The Panhandle Insurance Agency was also authorized by the company to collect the premiums on the policy after it was written. In performing this duty before the death of Pleas Pool, it accepted on behalf of plaintiff in error two checks at different times, one in the sum of $400 and one in the sum of $186.55. In July, after his death, it accepted another check in the sum of $195.17. These checks all had written upon them a statement in effect that they were for the account of Fain Johnston. Moreover, on the 28th day of May, 1934, after the death of Pool, plaintiff in error was fully informed, in a written statement to it by Fain Johnston concerning the death of Pool, that no partnership existed between him and his brother, Sidney Johnston, and that the operations being carried on under the policy were his individual enterprise and not that of a partnership. After receiving this information, plaintiff in error continued to collect the premiums on the policy and treated it as a valid and subsisting contract and, when it was finally canceled in November, 1934, it was on the ground of failure to pay the premiums thereon, and not because of any mistake or discrepancy in designation of the insured employer.

"We hold that the agent, Panhandle Insurance Agency, had authority to bind plaintiff in error in reference to the matters pertaining to the taking and forwarding to it of the application, including the name in which the policy was written, and that the policy was written to cover, and did cover, the employees of Fain Johnston, including the deceased, Pleas Pool, at the time of his death. We further hold that the discrepancy, if any, in the writing of the policy in the name of Johnston Brothers, Drilling Contractors, instead of Fain Johnston, was ratified and waived by plaintiff in error after it became apprised of the facts in connection with the same, and that plaintiff in error is estopped from denying liability thereon in so far as those matters are concerned."

In Fidelity Union Cas. Co. v. Hammock, Tex.Civ.App., 5 S.W.2d 812, 813, writ dismissed, Hammock, the injured claimant, was an employee of Aycock & Poole, a partnership, who were subscribers under the Workmen's Compensation Act, and

held a policy of insurance issued by said insurance company. The policy was issued in 1925. The policy gave the members of the assured firm as A. M. Aycock and R. H. Poole. Aycock had died in 1923. By agreement between Poole and the heirs of Aycock, the business was continued under the firm name. The defense to said suit was that, because of the facts stated, the policy was unenforceable since there was no such firm in existence, and Hammock was not an employee of the firm insured. The contention was overruled. The court said:

"It will be noted that appellant makes no contention that the policy should be held void because of any false or fraudulent representation in its procurement, which would be material to the risk it assumed. It seeks to avoid liability only upon the contention that the policy is void because by its terms it was to cover only the employees of Aycock and Poole, a copartnership composed of A. M. Aycock and R. H. Poole, and that, as there was no such partnership, the policy covered no employees.

"It is clear, we think, that it was the intention of appellant in the issuance of the policy to cover the employees of the business managed by R. H. Poole, known by the name of Aycock & Poole, and that it was not concerned as to who, in fact, composed the partnership."

Also, see New Amsterdam Cas. Co. v. Harrington, Tex.Com.App., 290 S.W. 726; Southern Surety Co. v. Eppler, Tex.Civ. App., 26 S.W.2d 697; Southern Underwriters v. Adams, Tex.Civ.App., 113 S.W. 2d 558; Southern Underwriters v. Shipman, Tex.Civ.App., 97 S.W.2d 370; Texas Emp. Ins. Ass'n v. McGehee, Tex.Civ. App., 75 S.W.2d 123; American Central Ins. Co. v. Heath, 29 Tex.Civ.App. 445, 69 S.W. 235; Gerard Fire & Marine Ins. Co. v. Frymier, Tex.Civ.App., 32 S.W. 55, 56; Merchants' Ins. Co. v. Bonnet, Tex. Civ.App., 48 S.W. 1110; Bonnet v. Merchants' Ins. Co., Tex.Civ.App., 42 S.W. 316.

■ After careful consideration we are of the opinion that the special issues quoted and the answers of the jury thereto find ample support in both the pleadings and evidence. We think reversible error is not shown because there was no specific reformation ,of the policy sued on. New Amsterdam Cas. Co. v. Harrington,

supra; Traders & General Ins. Co. v. Pool, supra.

■ Evidently the defendant intended that its policy should protect the employees of the insured, which, according to the evidence and the finding of the jury, the defendant knew was a partnership composed of Brimberry and Yonker. The evidence is sufficient to show that Wiebusch and Gunn of the Insurance Agency knew at the time the policy sued upon was issued that the Transportation Company was a partnership composed of said persons and knew that the policy applied for was intended for the protection of the employees of said partnership. There is no evidence of any misrepresentation by Brimberry, or anyone else, to obtain the issuance of said policy. Knowledge that the Transportation Company was such a partnership was obtained by the defendant's agents while acting for the defendant in the course of their employment. Such knowledge must be imputed to the defendant. Queen Ins. Co. v. May, Tex. Civ.App., 43 S.W. 73, writ refused. In the cited case it was held that when the insured told the soliciting agent of the insurer, while the agent was soliciting the insurance, of the defective condition of her title that the insurer would be deemed to have notice thereof, notwithstanding a written application made afterwards and upon which the policy was issued, but not referred to in the policy, made a statement relative to title contrary to that made to the soliciting agent.

Also see Hanover Fire Ins. Co. v. Nash, Tex.Civ.App., 67 S.W.2d 452, writ refused; Republic Reciprocal Ins. Co. v. Ewing, Tex.Civ.App., 27 S.W.2d 270, writ refused; Southern Underwriters v. Jones, Tex.Civ.App., 13 S.W.2d 435, writ refused; German Ins. Co. v. Everett, 18 Tex.Civ. App. 514, 46 S.W. 95, 96, writ refused; Home Ins. Co. v. Shepherd, Tex.Civ.App., 63 S.W.2d 758, writ refused; Williams v. Daniel, Tex.Civ.App., 30 S.W.2d 711; Calhoun v. Maccabees, Tex.Com.App., 241 S. W. 101; Terry v. Texas Prudential Ins. Co., Tex.Civ.App., 77 S.W.2d 761; Phoenix Ins. Co. v. Ward, 7 Tex.Civ.App. 13, 26 S.W. 763; Northwestern Fire & M. Ins. Co. v. Allred, Tex.Civ.App., 19 S.W. 2d 916; Bailey v. Sov. Camp, W. O. W, 116 Tex. 160, 286 S.W. 456, 47 A.L.R. 876; Fire Ass'n of Philadelphia v. Laning, Tex.Civ.App., 31 S.W. 681; National Fire Ins. Co. of Hartford v. Carter, Tex.Com.

**730**

App., 257 S.W. 531; Camden Fire Ins. Ass'n v. Wandell, Tex.Civ.App., 195 S.W. 289, 290.

■ Other than the knowledge of the facts by the agents named, if defendant did not have notice at its home office prior thereto, it obtained notice of the fact of partnership, and that the members of the Transportation Company were looking to the defendant's policy as protection for the employees of the partnership, in all events not later than February 26, 1936, and knew that said policy was deposited with the Railroad Commission "against" the Commission's permit issued to such partnership, as such. 46 C.J. 543. Thereafter with such knowledge, not only through its said agents, but also by notice to its general officers at its home office, the defendant made no attempt to cancel the policy in effect at the time Davis was killed, but left its said policy in the hands of the Railroad Commission, in the nature of security for the continued existence of the permit to the partnership, and treated it as a valid and binding contract. The defendant promised to issue an indorsement, correcting the name of the assured and changing it to the name of the partners doing business as the Oilfield Transportation Company. Defendant evidently issued such indorsement and delivered it, or caused it to be delivered, to the Industrial Accident Board, for the purpose of showing a change in the name of the assured, in connection with its notice that the Transportation Company had become a subscriber. See Mondragon v. Mondragon, 113 Tex. 404, 257 S.W. 215; Texas Emp. Ins. Ass'n v. Perry, Tex.Civ. App., 35 S.W.2d 1087; R.S.1925, Art. 8308, sec. 18; R.S.1925, Art. 8307, sec. 9, and § 8, as amended by Acts 1931, c. 89, Vernon's Ann.Civ.St. art. 8307, § 8. After acquiring such knowledge, defendant continued to collect and retain the monthly premiums on the payroll of said partnership, including the premium on the payroll for February 1936, of which the wages paid to Davis by the partnership constituted a part of the basis of compensation, and upon the expiration of said policy, on April 16, 1936, renewed it. Under such circumstances we think unquestionably the defendant should be held liable for the death of an employee of said partnership, first, because it knew the Transportation Company was a partnership and evidently intended said policy for the pro-

tection of the employees of the partnership, and, second, because, under the facts, it is estopped to contend to the contrary.

What has been said disposes of most of the contentions presented. All others have been carefully considered, are deemed without merit, and are overruled. The judgment is affirmed.